ROBERT W. RAMSEY, Plaintiff-Appellee, *v.* C. C. "DOC" GREENWALD *et al.*, Defendants-Appellants.

Second District No. 79-570

Opinion filed December 22, 1980.

VAN DEUSEN, J., dissenting.

Robert A. Frederickson and Jack D. Ward, both of Reno, Zahm, Folgate, Skolrood, Lindberg & Powell, of Rockford, for appellants.

Graves, Greenwald, Maier & Miner, of Rockford, for appellee.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff filed a two-count complaint in the circuit court of Winnebago County on October 22, 1974, which named as defendants in count I Peter Bosman, C. C. "Doc" Greenwald, John Hickey and Marshall Field & Company. He alleged that the individual defendants, "in the presence of third parties and in the scope of their employment by the defendant, Marshall Field & Company, stated that the plaintiff herein was intoxicated, was under the influence of narcotic drugs, had possession of marijuana and that because of the same, and for other reasons, was incompetent, unfit and unable to perform and/or discharge the duties of his employment with the defendant, Marshall Field & Company, and his profession and trade." Plaintiff further alleged that the statements were made by defendants with ill will toward plaintiff, that defendants knew or should have known that the statements were false, and that plaintiff was terminated by Marshall Field & Company and suffered injury as a direct and proximate result of the statements. As relief, plaintiff requested compensatory damages in the amount of $20,000 and exemplary damages in the amount of $100,000 plus costs.

In count II of his complaint, Ramsey alleged that the individual defendants intentionally undertook a scheme designed and intended to result in the termination of the employment relationship between Ramsey and Marshall Field & Company. Ramsey alleged that as a direct and proximate result of this scheme, Marshall Field & Company terminated his business relationship with plaintiff, causing him injury. Plaintiff requested compensatory damages in the amount of $20,000 and exemplary damages in the amount of $100,000.

An amended complaint alleging substantially similar matters was filed on the trial date and summary judgment in favor of defendant Bosman was granted on that date. The case against the rest of the defendants proceeded to trial before a jury. A directed verdict in favor of defendant John Hickey was entered at the close of plaintiff's case. The jury returned a verdict against C. C. "Doc" Greenwald and Marshall Field & Company on count I in the amount of $25,000. It further assessed punitive damages in the amount of $100 against defendant C. C. "Doc" Greenwald. On count II, the jury returned a verdict against defendant Greenwald, assessing compensatory damages in the amount of $500 and punitive damages in the amount of $500. Defendants appeal.

In 1973, plaintiff was working for defendant Marshall Field & Company at its Old Orchard store as a "B" engineer. During 1973, Marshall Field & Company opened a store at the Cherry Vale shopping complex and plaintiff requested and was granted a transfer to that facility. At Cherry Vale, plaintiff was employed as an "A" engineer.

Defendant C. C. "Doc" Greenwald was the lead engineer at the Cherry Vale store and was plaintiff's immediate supervisor. On July 30, 1974, a discussion took place between plaintiff and defendant Greenwald at the Cherry Vale store during which statements were made concerning plaintiff's drinking, taking of drugs and job competence.

At some point during the discussion, defendant John Hickey, the chief operating engineer and defendant Greenwald's supervisor, was reached by telephone at his office at the Chicago store. Plaintiff was told to report to defendant Hickey at the downtown Chicago store. When the plaintiff reported to Mr. Hickey, he was transferred to a fireman's position, which was a demotion. Subsequently, plaintiff filed a grievance with his union local regarding the incident. The union took the position that it had no jurisdiction over the grievance because plaintiff had accepted the position of fireman, which was represented by another union. Plaintiff was released from his position with defendant Marshall Field & Company on August 7, 1974.

Defendants raise six issues on appeal. The first is whether plaintiff's attorney prejudicially advised the jury in closing argument that a special interrogatory controls the general verdict. Two special interrogatories were submitted to the jury. They were:

> "At the time of the occurrence alleged by the Plaintiff, was the Defendant, C. C. 'Doc' Greenwald, acting within the scope of his employment by Marshall Field & Company?"

> "At the time of the occurrence alleged by the Plaintiff, was the Defendant, C. C. 'Doc' Greenwald, acting with actual malice toward Robert W. Ramsey?"

Both interrogatories were answered "yes" by the jury.

During his final argument, the plaintiff's attorney made reference to the special interrogatories. He stated in part:

> "I also ask that you return the form of verdict that finds on the special interrogatory that he was in the course of his employment; and as a result of that, that you return that verdict against Marshall Field's, if you see fit."

The defendants' attorney objected to the reference. The trial court sustained the objection, stating, "Don't pursue that argument any further, tying the two together. Sustain the objection. Disregard the argument tying the verdict and the special interrogatory. * * *."

Subsequently, out of the presence of the jury, plaintiff's counsel stated he had honestly meant to refer to the issue instruction and not the special interrogatory. Defendants' attorney asked for a mistrial on the basis of improper argument. The motion for mistrial was denied.

■■ Argument which informs the jury of the source of an interrogatory and advises the jury to conform its answer to the verdict so as to protect

the verdict is improper argument which has been held to be reversible error. (*Sommese v. Maling Brothers, Inc.* (1966), 36 Ill. 2d 263, 266-67; *Thomas v. Dalpos* (1975), 26 Ill. App. 3d 877; *Sutton v. Peoples Gas Light & Coke Co.* (1970), 119 Ill. App. 2d 471.) Such argument has been said to undermine the purpose of the special interrogatory, which is to test the general verdict against the jury's conclusions as to the ultimate controlling facts. (*Sommese*, at 267.) It is not improper for an attorney to comment on the evidence and suggest an answer to the interrogatories, so long as no reference to the effect of the jury's answer on the general verdict is made. (*Thomas*, at 882; *Moore v. Checker Taxi Co.* (1971), 133 Ill. App. 2d 588; *DeFranze v. Valenzia* (1969), 118 Ill. App. 2d 306.) The question thus becomes whether plaintiff's counsel's remarks advised the jury of the effect of the answer to the special interrogatory on the general verdict, or whether counsel was merely suggesting an answer to the interrogatories, based on a review of the evidence.

From our review of counsel's statements, it appears that his reference to the special interrogatories was more than a suggestion to the jury. Counsel requested that the jury answer the scope of employment interrogatory affirmatively, and requested "as a result of that" they return a verdict against Marshall Field's.

It is true that the trial court recognized the improper argument made by plaintiff's counsel, and sustained an objection by defendants' counsel to the argument. However, the curative instruction given by the trial court, rather than correcting the error, was phrased in such a way that it compounded the error. The trial court in sustaining the objection used the phrases "tying the two together" and "tying the verdict and the special interrogatory." This type of curative instruction would not seem to overcome the erroneous reference made to the special interrogatory by plaintiff's counsel.

■■ Although the combination of plaintiff's counsel's misstatement and the court's curative instruction may have suggested the link between the verdict and the special scope of employment interrogatory, we determine this error was harmless since the issue of whether Greenwald was acting within the scope of his employment had been admitted by the defendants both in pleadings and in the instructions and thus was not an issue to be decided by the jury. The interrogatory was surplusage. Defendants argue, however, that even though the improper reference related to the employment interrogatory, that the jury could also have inferred from that that the answer to the malice interrogatory must likewise conform to the verdict. We find no prejudicial error here either, because that inference similarly could have been drawn by the jury by virtue of the malice instruction itself. The instruction read:

"The court has found as to the defendant, C. C. 'DOC' GREEN-

WALD, that such defendant has a conditional privilege to make the statements that he did. *Therefore, before you may find in favor of the plaintiff as against said defendant, you must find that said defendant acted with actual malice towards the plaintiff.* Actual malice is with knowledge that statements were false or with reckless disregard of whether they were false or not." (Emphasis added.)

In sum, we find that plaintiff's counsel's unintentional misstatement caused no prejudice to the defendants.

The second issue raised by defendants is whether the trial court erred in refusing to give defense instruction No. 1. That instruction read as follows:

"There was in force at the time of this occurrence, case law derived from the National Labor Relations Act, which provided that a union had a duty of fair representation of any individual in its bargaining unit, and said duty applied if said individual was in the bargaining unit at the time of the occurrence which gave rise to the alleged grievance. The union's jurisdiction to diligently represent the individual would continue beyond his employment in that unit, or withdrawal from that unit, if the grievance arose while a member of that unit."

■■ Defense counsel sought to argue that the plaintiff's own union felt his claim was without merit and, since he had accepted the fireman's position, they used the jurisdictional excuse that plaintiff was no longer covered by the Engineers' Union to avoid processing his grievance. Although defense instruction No. 1 may have accurately stated the law regarding the duty of an exclusive bargaining agent to represent all members of an appropriate unit without hostility or discrimination (see generally *Vaca v. Sipes* (1967), 386 U.S. 171, 177, 17 L. Ed. 2d 842, 850, 87 S. Ct. 903, 909; *Ford Motor Co. v. Huffman* (1953), 345 U.S. 330, 337, 97 L. Ed. 1048, 1057, 73 S. Ct. 681, 686), the issue of the duty of the union to diligently represent the plaintiff through the grievance procedure was not raised by the evidence. It is not error for a court to refuse to give an instruction if there is no evidentiary basis for that instruction (*Baird & Warner, Inc. v. Ruud* (1976), 45 Ill. App. 3d 223, 232), nor to refuse an instruction containing a mere abstract proposition. (*Manns v. Stein* (1968), 99 Ill. App. 2d 398.) Therefore, we conclude the trial court in the instant case did not err in refusing to give defense instruction No. 1.

The defendants' third contention on appeal is that the trial court improperly excluded as hearsay evidence statements made by John Godley, who was the lead engineer at the Old Orchard store where plaintiff worked prior to his transfer to the Cherry Vale store. Both a written statement submitted by Godley to John Hickey and alleged oral

statements made by Godley were excluded. The defendants contend that the exclusion of the statements as hearsay was erroneous, since the statements were not being offered for the truth of the matter asserted, but to show what information John Hickey had available before terminating the plaintiff. The trial court found that the written statement was not admissible as a business record because there was no showing that the report was made in the regular course of business. The court further found that all statements made by Godley to Hickey were hearsay, and even if they were not offered for the truth of the matter asserted, they were prejudicial.

The exclusion of the written statement made by Godley was not error. However, the appropriate basis for the exclusion of the statement would seem to be its lack of relevance, rather than its hearsay character, since the memo was received by John Hickey following the plaintiff's termination. Therefore, it had no bearing on the issue in dispute; *i.e.*, what information John Hickey had relied on in terminating the plaintiff.

■■ Defendants argue, however, that the memo was a written confirmation of oral statements made by Godley to Hickey prior to the plaintiff's termination, and that in this respect the court erred in excluding testimony concerning those oral statements wherein Godley allegedly made certain observations concerning plaintiff's job performance. From our review of the excluded memo which was included in the common law record, the oral statements upon which the memo was based were apparently given in response to a question from Hickey as to whether or not Godley felt Ramsey "would be all right [*sic*] as a [*sic*] engineer." The gist of Godley's response to Hickey's question must have been favorable to Ramsey for two reasons: first, Godley said he "did not like to hurt his [Ramsey's] chances," and second, Ramsey got the job at Cherry Vale. There is no indication in the memo that Godley ever expressed his misgivings about Ramsey's job skills to Hickey prior to the time Hickey terminated Ramsey. As such, we do not see what relevance the admission of such testimony would have had on the issue of Hickey's reasons for firing Ramsey, and conclude the court did not err in excluding such testimony.

The defendants' fourth contention is that the trial court erred in giving the malice instruction, set forth above in connection with the first issue on appeal. The trial court refused an instruction proposed by the defendants which they asserted contained the proper definition of malice. That proposed instruction stated:

> "Malice or ill-will or bad faith used in these instructions related to the plaintiff's complaint, means an actual intention to injure or defame the Plaintiff."

■■ We find the malice instruction given by the court properly stated the definition of malice. (*Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill.

2d 345, 350; *Colson v. Stieg* (1980), 86 Ill. App. 3d 993.) Therefore, the trial court correctly instructed the jury as to the elements necessary to establish malice which would overcome the privilege.

■■ The defendants' fifth contention is that entries made by the plaintiff in a log book which properly could be, and was, admitted as a business record, should have been excluded because the entries were self-serving. It is true that self-serving declarations are not admissible in evidence. (*National Importing & Trading Co. v. E. A. Bear & Co.* (1927), 324 Ill. 346, 361.) However, otherwise competent evidence will not be rejected because it contains statements of a self-serving character. (*National Importing Co.*, at 361.) Since the log book was properly admitted as a business record, the fact that it contained entries made by the plaintiff should not serve as a basis for its exclusion. The nature of such self-serving entries affects the weight given to the log book, rather than its admissibility. Therefore, no error was committed by the trial court in admitting the log book into evidence.

The defendants' sixth and final contention on appeal is that the jury verdict on count II of the complaint should be set aside for the reason that an employee acting within the scope of his employment cannot be liable to a co-employee for tortious interference with the co-employee's contract with a common employer.

It is well established that one who intentionally and without justification induces another to breach his contract with a third party will be liable to the other for the pecuniary loss resulting from the failure of the third person to perform the contract. (*Blivas & Page, Inc. v. Klein* (1972), 5 Ill. App. 3d 280, 285; Restatement (Second) of Torts §766 (1979).) Defendants cite *Worrick v. Flora* (1971), 133 Ill. App. 2d 755, 759, for the proposition that a person will not be subject to liability for affecting the employment relations of another where the other is a fellow employee and the person affecting the relationship is acting in the interest of the employer and is exercising his duties. Defendants contend that since the jury found on the special interrogatory that Greenwald was acting within the scope of his employment, that he cannot be held liable in the instant cause. Defendants reason that when an employee-agent acts within the scope of his employment with the corporation, he stands in the shoes of his employer and cannot be a third party interfering with the contractual relationship existing between a fellow employee and the common employer.

The essential elements of the tort of inducing breach of another's contract are (1) the existence of a valid and enforceable contract; (2) the defendant's knowledge of it; (3) intentional and malicious inducement of the breach; (4) the subsequent breach by the third person due to the defendant's wrongful conduct and (5) damage to the plaintiff. (*Mitchell*

*v. Weiger* (1980), 87 Ill. App. 3d 302.) The party alleging an agency relationship has the burden of proving it by a preponderance of the evidence. (*Lazarus v. Pascucci* (1979), 74 Ill. App. 3d 633.) The defendants argue that the jury's answers to the interrogatories are inconsistent with each other since its finding of actual malice would operate to take Greenwald out of the scope of his employment.

We cannot approve this argument. Greenwald did not have the power to hire or fire Ramsey, and although the submission of reports regarding Ramsey's performance may have been a task that was "within the scope of his employment," the fact that Greenwald acted with actual malice in submitting those performance reports negatives any contention that he was acting in the best interests of Marshall Field's. As noted in *Worrick*:

> "[T]he theory of liability depends on considerations of privilege or justification. Such considerations involve generally accepted or acceptable standards of conduct. \* \* \*
>
> \* \* \*. Whether his conduct was privileged or justified does not depend upon plaintiff's misconduct or absence thereof but upon whether defendant was acting for personal interests of his own and contrary to those of the corporation." 133 Ill. App. 2d 755, 758.

■■ Obviously, malicious defamation is totally unacceptable conduct, and liability must devolve upon any party utilizing such conduct to interfere with the contractual relations of third parties. Even though Greenwald had qualified privilege within the scope of his employment to report on the quality of Ramsey's performance, he had no privilege to *maliciously* defame him in the course of so reporting, *i.e.*, with knowledge that his statements were false or with reckless disregard of whether they were false or not. Defendants' contention that the privilege is absolute or that the privilege is inconsistent with the finding of actual malice is erroneous as the privilege is only qualified and disappears on a finding of actual malice as defined in the instructions.

Further, the issue of whether Greenwald was acting within the scope of his employment is not an element of the tort which must be proved. Therefore, the special interrogatory on the scope of employment was improperly submitted to the jury, and no inconsistency between the interrogation and/or the general verdict may be seen. See *Eichorn v. Olson* (1975), 32 Ill. App. 3d 587.

The judgment of the circuit court of Winnebago County is affirmed.

Judgment affirmed.

WOODWARD, J., concurs.

Mr. JUSTICE VAN DEUSEN, dissenting:

For an employee to be acting within the scope of his employment, he must be acting in his employer's interest. (*Rosenberg v. Packerland Packing Co.* (1977), 55 Ill. App. 3d 959, 963, and cases cited therein.) However, if he is acting in the furtherance of his employer's interest, he cannot be held personally liable for tortious interference with a co-employee's contract with a common employer. *Worrick v. Flora* (1971), 133 Ill. App. 2d 755, 759.

As a result of the majority opinion in this case, we permit plaintiff to recover in count I of the complaint against Marshall Field under the doctrine of *respondeat superior* on the ground that Greenwald was acting within the scope of his employment; at the same time we permit plaintiff to recover against Greenwald in count II on the ground that he maliciously interfered with the plaintiff's employment contract with Marshall Field, which, as the majority opinion states, negatives any contention that Greenwald was acting in the best interest of Marshall Field. Such a result is irreconcilable and cannot stand.

Nor can we determine from the record which verdict should be sustained. The answers the jury gave to the special interrogatories are inconsistent. The jury found that the defendant Greenwald was acting within the scope of his employment (in the furtherance of his employer's interest) and that he was acting with actual malice (against his employer's interest).

The majority finds that the special interrogatory on the scope of employment was improperly submitted to the jury and reasons that, since the defendants had not denied that Greenwald was in the scope of his employment, the question of scope of employment is not an issue in this case. Ordinarily, this would be true, but such is not the case where the plaintiff chooses to submit his case to the jury on the basis of two inconsistent theories as set forth in counts I and II of the complaint. By so doing, it becomes necessary that both of these issues be submitted for determination by the jury. Plaintiff cannot have it both ways at the same time.

In light of the conflicting answers which the jury gave to these special interrogatories, it is obvious that the jury was confused. The verdicts based upon these inconsistent answers cannot stand.

I would reverse the jury verdicts and the judgments entered thereon against Greenwald and Marshall Field and remand the matter to the trial court for a new trial.