**Robert L. KUFALK, Plaintiff,**

v.

**Donald W. HART, Fred W. Kraiss, Richard F. Kunnert, Patricia A. McGrail, Randall J. Manus, Steven L. Nordquist, Anne M. Brannon, Michael C. Sabo, Beatrice Preston, and Barbara Olson School of Hope, Defendants.**

No. 84 C 20077.

United States District Court, N.D. Illinois, W.D.

March 18, 1985.

**1182**

Thomas Z. Hodson, Connolly Hickey & Oliver, Rockford, Ill., for plaintiff, Kufalk.

Edward M. Maher, Paddock, McGreevy & Johnson, Rockford, Ill., for Steven L. Nordquist, third party plaintiff.

Ronald E. Brandt, Asst. Atty. Gen., State of Ill., Eugene Brassfield, Rockford, Ill., for third party defendant.

Peter S. Switzer, Rockford, Ill., for defendants.

## TABLE OF CONTENTS

I. Background _____ 1182
II. Discussion _____ 1184
    A. § 1983 Claims _____ 1184
        1. State Action _____ 1184
           a. State Defendants _____ 1184
           b. Hope Defendants _____ 1185
               1) State Funding _____ 1185
               2) State Function _____ 1185
               3) Concerted Action _____ 1186
        2. Deprivation of a Protected Right _____ 1186
           a. First Amendment _____ 1187
           b. Due Process _____ 1189
               1) Liberty Interest _____ 1189
               2) Property Interest _____ 1190
        3. State Remedies _____ 1190
    B. Punitive Damages Claim _____ 1191
        1. § 1983 Claim _____ 1191
        2. State Tort Claim _____ 1191
    C. Pendent State Claims _____ 1191
        1. Malicious Interference with Employment Relationship _____ 1191
        2. Breach of Employment Agreement _____ 1193
    D. State Defendants' Immunity _____ 1193
        1. Absolute Immunity _____ 1194
        2. Qualified Immunity _____ 1195
III. Conclusion _____ 1195

## ORDER

ROSZKOWSKI, District Judge.

Before the court are defendants' motions to dismiss. The court's subject matter jurisdiction is asserted to rest upon 28 U.S.C. § 1343 (1982) and 42 U.S.C. § 1983 (1982). For the reasons set forth herein, defendants' motions are denied.

## I. BACKGROUND

Plaintiff's complaint alleges a violation of § 1983 and also alleges pendent state tort and contract actions. For purposes of the present motions, the facts alleged in the plaintiff's complaint must be accepted as true. The relevant factual allegations are essentially as follows.

Plaintiff, Robert L. Kufalk, was employed as executive director of the defend-

ant, Barbara Olson School of Hope ("School of Hope"), from September 2, 1974 until June 9, 1983. The defendant, School of Hope, is a not-for-profit corporation providing day training, work activity programs and sheltered workshop programs for developmentally disabled adult clients. At least since 1974, a "major portion" of the operating funds of the defendant, School of Hope, have been provided by the Illinois Department of Mental Health and Developmental Disabilities ("DMH"). These funds are provided for the purpose of affording education, training and supervision for developmentally disabled wards of the state.

Since at least 1979, plaintiff alleges he has verbally criticized the conduct of various DMH employees, including defendants, Donald W. Hart, Fred W. Kraiss and Rich-

ard F. Kunnert. Plaintiff alleges he has orally criticized those defendants for their interpretation of laws and regulations regarding the reporting of physical abuse and other violations of developmentally disabled clients' human rights, and for their application and interpretation of regulations concerning the prevention of abuse. Plaintiff allegedly complained that "these subversions and misuses had adversely affected the clients these regulations were supposed to protect by causing excessive staff turnover..., by causing a climate of racial tension and other personal conflicts, by causing abusive use of drugs, by causing concealment and shifting of blame for true cases of abuse, and by discouraging appropriate care and attention for difficult patients"

As a result of his criticisms, plaintiff alleges he became the object of a conspiracy to injure him in his employment and to deprive him of rights secured by the First, Fifth and Fourteenth Amendments. The paticipants in the alleged conspiracy included defendants, Hart, Kraiss and Kunnert, along with defendants, Patricia A. McGrail and Randall J. Manus, employees of the Illinois Guardianship and Advocacy Commission (collectively referred to as "the state defendants"). The state defendants allegedly conspired with the defendant, School of Hope, and with defendants, Steven L. Nordquist, Anne M. Brannon and Michael C. Sabo, officers and directors of the School of Hope, and Beatrice Preston, a member of the School of Hope's education Committee (collectively referred to as the "Hope defendants").

According to the allegations in the complaint, in June 1982, the state defendants issued findings based upon an investigation of the defendant, School of Hope. Those findings disclosed that over one hundred confirmed reports of physical injuries to clients "resulting from accident or abuse had been made since January, 1982." The tone of the report was critical of the plaintiff's personnel policies and of the administration's failure to agree on the issues. Plaintiff alleges various reasons why the state defendants "knew or should have known upon reasonable inquiry that said findings were false, misleading, and pretextual."

On April 22, 1983, plaintiff alleges the state defendants caused a letter to be sent to the defendant, School of Hope's, Board of Directors referring to him as the "administration" and charging him with a "lack of cooperation", "defensiveness", and an incorrect "behavioral attitude" concerning the issue of client abuse. In addition, the letter allegedly stated that recommended policy and procedural changes could not be successfully implemented "until the attitude and philosophy of the administration changes to provide a more appropriate treatment environment within the agency." Plaintiff again alleges various reasons why state defendants, Manus and McGrail, the authors of the letter, "knew or should have known upon reasonable inquiry that the statements concerning plaintiff in the said letter of April 22, 1983, were false, misleading, and pretextual."

On or about April 29, 1983, defendant, Hart, allegedly notified defendant, Nordquist, then president of the School of Hope's Board of Directors, that DMH funding would be held up pending resolution of "serious issues". Without citing any specific provisions, plaintiff alleges there "were no issues justifying withholding the funding under the law or constitution of the State of Illinois." Plaintiff alleges the "alleged issues were merely pretextual reasons to pressure plaintiff's employer to punish plaintiff for his expression of his opinions in disagreement with those of the [state defendants]."

On May 19, 1983, certain of the state defendants met with certain of the Hope defendants to discuss the withholding of DMH funds. At that meeting, plaintiff alleges that state defendants, Hart, Kraiss and Kunnert, "made certain false, misleading, and pretextual statements concerning the withholding of funding ... and concerning plaintiff's suitability as executive director" Specifically, plaintiff alleges state defendant, Kraiss, expressed dissatis-

faction "with how $20,000 of a prior state appropriation had been spent by plaintiff." Once again, citing various reasons, plaintiff alleges the state defendants "knew or should have known upon reasonable inquiry that said statements of May 19, 1983 were false, misleading and pretextual."

On May 20, 1983, at a Board of Directors meeting, plaintiff alleges Hope defendants, Nordquist and Preston, "acting in concert with [the state defendants] and in furtherance of their plan to interfere with plaintiff's employment, made certain false, misleading and pretextual statements" concerning the events transpiring at the May 19, 1983 meeting. Specifically, plaintiff alleges defendant, Preston, stated the plaintiff "had misused $20,000 of funds received under a contract with [the state]." Plaintiff alleges the Hope defendants "knew or should have known upon reasonable inquiry that their said statements of May 20, 1983 were false, misleading and pretextual."

On or about May 28, 1983, plaintiff alleges an *ad hoc* meeting of the defendant, School of Hope's, Board of Directors was held to investigate the withholding of funds. At the meeting, the plaintiff alleges the state defendants "repeated and added to the earlier, false, misleading and pretextual statements concerning the plaintiff." Plaintiff alleges the state defendants' statements were intended to convince the Directors that DMH funds "would not be released unless plaintiff [was] fired from his position with [the] defendant, [School of Hope]."

On June 8, 1983, plaintiff alleges that similiar statements were made by state defendants, Manus and McGrail, at another special meeting of the Board of Directors. Earlier that day, plaintiff alleges Hope defendants, Nordquist, Brannon and Sabo, had asked the plaintiff for the documents he had prepared in response to the DMH demands and had been shown "that the documents were complete, or virtually complete." At the special meeting, however, plaintiff alleges those same Hope defendants, "failed to disclose and concealed that plaintiff had completed the tasks requested [by DMH] ... although [state] defend-

ant[s] Manus and McGrail then and there charged that plaintiff had failed to carry out those tasks." As a result, plaintiff alleges the Board of Directors voted to give the plaintiff the "option" to voluntarily resign or be terminated. On June 9, 1983, plaintiff resigned.

## II. DISCUSSION

### A. § 1983 Claims

#### 1. State Action

■ Defendants initially move for dismissal contending the plaintiff has failed to allege a sufficient nexus between his constructive discharge and any "state action." Section 1983 prohibits persons acting under "color of" state law from depriving any person of any rights, privileges or immunities secured by the Constitution or federal law; it does not, however, prohibit wholly private deprivations of Constitutional rights. *See Loyd v. Loyd*, 731 F.2d 393, 398 (7th Cir.1984).

#### a. State Defendants

The state defendants argue there is not a sufficient nexus between the plaintiff's forced resignation and their actions to invoke § 1983. The state defendants contend the decision to force the plaintiff's resignation was a wholly private one. Thus, despite the state's funding and regulation of the School of Hope, the state defendants contend *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) bars the plaintiff's action.

In *Blum*, a class of state medicaid patients brought an action complaining of nursing home transfers and discharges without notice or an opportunity for hearing. 102 S.Ct. at 2780. While the class members conceded the transfer and discharge decisions originated with the private nursing homes, they attempted to hold the state regulating officials liable for the private nursing homes' decisions. 102 S.Ct. at 2785. Despite the state's funding and regulation of the Medicaid program, however, the Court held there was no state action sufficient to invoke § 1983.

While the Court in *Blum* held that mere approval of, or acquiescence in, the actions of private parties is insufficient to constitute state action, it was also recognized that a state can be held liable for an ostensibly private decision where "it has exercised coercive power or has provided such encouragement either overt or covert, that the choice in law must be deemed to be that of the state." 102 S.Ct. at 2786. In the view of this court, the plaintiff's complaint alleges sufficient facts to fall within the cited exception. Plaintiff alleges far more than mere acquiescence by the state defendants in a private, unilateral decision to terminate his employment. Rather, plaintiff alleges the state defendants "pressure[d] plaintiff's employer to punish plaintiff for his expression of his opinions" Moreover, plaintiff alleges various facts, including the withholding of funds, that indicate the exercise of coercive power by the state defendants. Thus, in the view of this court, the plaintiff has adequately alleged the state defendants acted under "color of" state law.

### b. Hope Defendants

Similarly, the Hope defendants contend they did not act under "color of" state law so as to be liable under § 1983. Plaintiff, on the other hand, contends the Hope defendants acted under "color of" state law because: (1) the defendant, School of Hope, is largely state funded, (2) the defendant, School of Hope, fulfills a traditional state function, and (3) the Hope defendants acted in concert with the state defendants.

### 1) State Funding

In *Rendell-Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), the Court was asked to decide whether a private school, whose income was derived primarily from public sources and which was regulated by public authorities, acted under color of state law when it discharged certain employees. 102 S.Ct. at 2766. The private school in *Rendell-Baker* specialized in dealing with students who had experienced difficulty completing public high school because of drug, alcohol, behavioral problems, or other special needs. 102 S.Ct.

at 2767. Nearly all of the school's students were referred directly by public agencies which paid their full tuition. *Id.* Indeed, between 90 and 99 percent of the school's operating budget was provided by the state, and the school was subject to detailed state regulation. *Id.*

The plaintiffs in *Rendell-Baker* alleged the school's officials had violated 42 U.S.C. § 1983 by discharging them because of their exercise of their First Amendment right of free speech. 102 S.Ct. at 2769. In addition, the plaintiffs alleged the school violated § 1983 by discharging them without the process due them under the Fourteenth Amendment. *Id.* The Court dismissed the plaintiffs' actions concluding the school's relationship with the state was not sufficient to satisfy the "color of" state law requirement of § 1983.

In the view of this court, *Rendell-Baker* is fully applicable to the present case. In the instant case, plaintiff merely alleges a "major portion" of the operating funds of the defendant, School of Hope, are provided by the state. Even if a "major portion" is equivalent to 99 percent, *Rendell-Baker* makes clear that such funding, standing alone, is insufficient to make the defendant, School of Hope, a *de facto* state agency.

### 2) State Function

Plaintiff seeks to distinguish *Rendell-Baker* on the grounds that the services in the present case constitute an "exclusive state function." In *Rendell-Baker*, the Court stated:

> our holdings [have] made clear that the relevant question is not simply whether a private group is serving a 'public function'. We have held that the question is whether the function performed has been 'traditionally the *exclusive* prerogative of the state.'

102 S.Ct. at 2772 (emphasis in original) (citations omitted). Citing state law, the Court in *Rendell-Baker* held the school's function was not exclusively that of the state.

1186

Since he has alleged the defendant, School of Hope's, clients are "wards of the state", plaintiff contends he has satisfied the exclusive state function requirement. In the view of this court, however, plaintiff's conclusory allegation that the developmentally disabled adults served by the defendant, School of Hope, are "wards of the state" is insufficient to distinguish this case from *Rendell-Baker*. Plaintiff has failed to cite, and this court has failed to locate, any statutory provision making the care of such individuals the exclusive function of the state. There is nothing, therefore, to distinguish the developmentally disabled adults in the present case from the troubled minors in *Rendell-Baker*. Consequently, this court holds the public nature of the services performed by the defendant, School of Hope, is insufficient to make it an arm of the state.

### 3) Concerted Action

In *Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980), the defendants, a judge and various private individuals, allegedly conspired to enter an unlawful injunction. Plaintiffs filed suit against the defendants contending the injunction deprived them of property without due process. After plaintiffs' claim against the judge was dismissed on the grounds of absolute immunity, the private defendants sought dismissal based upon the absence of any state action.

The Supreme Court affirmed the appellate court's reversal of the district court decision granting the remaining defendants' motions to dismiss. In affirming the appellate court, the Court noted "[p]rivate persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983." In reaching its decision, the Court relied mainly upon *Adickes v. S.H. Kress and Company*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

In *Adickes*, plaintiff brought a § 1983 action arising out of the defendant's refusal to serve her lunch and her subsequent arrest upon her departure from the defendant's restaurant. The court held the plaintiff would be allowed to recover if she could prove that one of the defendant's employees and the arresting officer "somehow reached an understanding to deny [the plaintiff] service ... or to cause her subsequent arrest because she was a white person in the company of Negroes." *Id.* at 152, 90 S.Ct. at 1605. The court noted that "a private party involved in such a conspiracy, even though not an official of the state, can be liable under § 1983." *Id.*

Recent Seventh Circuit decisions have similarly recognized that § 1983 extends to private parties conspiring with public officials. *See Hudson v. Chicago Teachers Union Local No. 1*, 743 F.2d 1187, 1191 (7th Cir.1984) (recognizing that when a public employer assists a union in coercing public employees to finance political activities, the union is liable under § 1983). Given the fact that public officers discharging their official duties are often innocently involved in private schemes, however, the Seventh Circuit has required plaintiffs to plead conspiracy with great specificity. *See Winterland Concessions Co. v. Trela*, 735 F.2d 257, 262 (7th Cir.1984) (holding unsupported, conclusory allegations of conspiracy must be dismissed). In *Sparkman v. McFarlin*, 601 F.2d 261, 268 (7th Cir. 1979) (en banc), the court noted that allegations of conspiracy must be supported by some factual allegations suggesting a meeting of the minds.

In the view of this court, the allegations of the plaintiff's complaint are sufficient to allege the Hope defendants were acting in concert with the state defendants. Plaintiff has done far more than merely allege a conspiracy; he has alleged specific instances in which the Hope defendants acquiesced in, or affirmatively repeated, various false, misleading and pretextual statements uttered by the state defendants. Thus, in the view of this court, the plaintiff has alleged concerted action between the state defendants and the Hope defendants sufficient to satisfy the "color of" state law requirement of § 1983.

### 2. Deprivation of a Protected Right

In order to allege a cause of action under § 1983, a plaintiff must allege more

than state action. It is also necessary to allege a violation of some right, privilege or immunity secured by the Constitution or federal law; a violation of state law is not sufficient to invoke § 1983. *Williams v. Treen,* 671 F.2d 892, 906 (5th Cir.1982) *cert. denied,* 459 U.S. 1126, 103 S.Ct. 762, 74 L.Ed.2d 977 (1983).

In the present case, defendants contend the plaintiff has failed to allege a violation of his First Amendment right to freedom of speech. Moreover, defendants contend the plaintiff has failed to allege an interest in his continued employment sufficient to implicate the Fifth or Fourteenth Amendments' due process requirements. As a result, defendants contend the plaintiff has failed to satisfy the federally protected right requirement of § 1983.

### a. First Amendment

In arguing whether the plaintiff's First Amendment rights have been violated, both sides rely upon decisions involving "public employees". While this court has held that the plaintiff's complaint is sufficient to allege the defendants engaged in a conspiracy to bring about his discharge and, consequently, that the defendant's were acting under "color of" state law, this court has not held the defendant, School of Hope, was the equivalent of a state agency or that the plaintiff was the equivalent of a "public employee". Nonetheless, this court finds the "public employee" decisions relied upon by the parties are fully applicable.

The plaintiff alleges that he became the object of state action as a result of criticizing the state defendants and other state officials. In the view of this court, the relationship between supervising state officials and independent, state subsidized, health care providers is fully analogous to a direct state employer-employee relationship. The same interests in maintaining stability and cooperation exist. Thus, there is no logical reason for avoiding the application of the "public employee" decisions in the present context.

The starting point for any discussion of public employees' First Amendment rights in the workplace must be *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). In *Pickering,* the plaintiff was dismissed from his position as a teacher for sending a letter to a local newspaper concerning a proposed tax increase. *Id.* at 565, 88 S.Ct. at 1733. The letter criticized the way in which the defendant, School Board, had handled past proposals to raise new revenue for the schools. *Id.* After a full hearing, the School Board determined that the letter "was detrimental to the efficient operation and administration of the schools of the district" and discharged the plaintiff. *Id.*

Because of the enormous variety of fact situations in which such statements may arise, the Court did not "deem it either appropriate or feasible to attempt to lay down a general standard against which all such [employee'] statements may be judged." *Id.* at 569, 88 S.Ct. at 1735. Instead, the Court held the problem for courts is "to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees." Under the circumstances found in *Pickering,* particularly in view of the strong public interest in having unhindered debate and the absence of any close working relationship between the plaintiff and the School Board, the Court found the plaintiff's First Amendment rights had been violated.

In *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), the Supreme Court refined the test set forth in *Pickering.* In *Connick,* the plaintiff was discharged from her position as an assistant district attorney, in part, for her insubordination in circulating a questionnaire concerning internal office affairs. 103 S.Ct. at 1686. Specifically, the plaintiff, who had previously expressed dissatisfaction with a proposed transfer, prepared and circulated a questionnaire soliciting fellow staff members views concerning office transfer policy, office morale, the need for a grievance committee, the level of confidence in supervisors, and whether employ-

ees felt pressured to work in political campaigns.

In *Connick*, the Court held that a two-step process applies in determining whether the First Amendment is implicated. First, it must be determined whether the subject speech involves a matter of public concern; if it does not, than the federal court is not a proper forum. 103 S.Ct. at 1690. The Court held that "[w]hether an employees' speech addresses a matter of public concern must be determined by the content, form, and context of a given statement as revealed by the whole record." *Id.* If the speech does involve a matter of public concern, however, then the *Pickering* balancing test must be applied. 103 S.Ct. at 1691–92. *See also Yoggerst v. Hedges*, 739 F.2d 293, 295 (7th Cir.1984)

In *Connick*, the Court held the first four areas explored in the plaintiff's questionnaire did not touch upon matters of public concern. The Court viewed those questions "as a mere extension of [the plaintiff's] dispute over her transfer to another section of the criminal court" and found they would not be "of public import in evaluating the performance of the District Attorney as an elected official." 103 S.Ct. at 1690. The Court noted:

> To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case. While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs. 103 S.Ct. at 1691

The Court did hold, however, that the plaintiff's inquiry into whether her co-employees "ever feel pressured to work in political campaigns on behalf of office supported candidates" did touch upon a matter of public concern. 103 S.Ct. at 1691. The Court noted "the issue of whether assistant district attorneys are pressured to work in political campaigns is a matter of interest to the community upon which it is essential that public employees be able to speak out freely without fear of retaliatory dismissal." *Id.* Emphasizing the disruption of an essential working relationship, that the questionnaire was distributed during working hours, and the plaintiff's more than "academic interest" in the survey's outcome, however, the Court, applying the *Pickering* balancing test, determined there was no First Amendment violation. 103 S.Ct. at 1693–94.

Several recent Seventh Circuit decisions have dealt with the issues raised in *Connick* and *Pickering*. In *Yoggerst v. Hedges*, 739 F.2d 293 (7th Cir.1984), the court held a public employee's comment to a co-worker concerning an unconfirmed newspaper report that their Director had been discharged ("Did you hear the good news?") was not related to a matter of public concern. Similarly, in *Altman v. Hurst*, 734 F.2d 1240 (7th Cir.) *cert. denied* —— U.S. ——, 105 S.Ct. 385, 83 L.Ed.2d 320 (1984), the court held the First Amendment did not protect the plaintiff from retaliatory discharge for encouraging a fellow employee to appeal a suspension and for filing the subject lawsuit. *See also Zook v. Brown*, 748 F.2d 1161 (7th Cir.1984); *Benson v. Scott*, 734 F.2d 1181 (7th Cir.) *cert. denied* —— U.S. ——, 105 S.Ct. 435, 83 L.Ed.2d 361 (1984); and *Crawford v. Garnier*, 719 F.2d 1317 (7th Cir.1983).

■ In the view of this court, the statements alleged in the present case related to matters of public concern. The statements alleged related to public officials' application and interpretation of state law, and the resulting consequences for health care providers and beneficiaries. Although this court is conscious that not every statement relating to public services pertains to a matter of public concern, the statements alleged here plainly appear to do so. Moreover, it makes no difference that the criticisms were communicated privately rather than in the press. *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979). Thus, this court has little difficulty

in concluding the statements alleged relate to matters of public concern.

▮▮▮▮ Having concluded the alleged statements related to a matter of public concern, the issue, assuming the plaintiff can establish the state defendants sought his discharge as a result of his making the subject statements, becomes whether the plaintiff's interest, as a citizen, in commenting upon the state defendants' interpretation of the applicable Illinois statutes and regulations outweighed, or was outweighed by, the statedefendants' interest in promoting the efficiency of the public services performed through private mental health care providers.[1] In the view of this court, the allegations of the plaintiff's complaint, if proven, support a First Amendment violation. There is no indication that the working relationship between the plaintiff and the state defendants required any particular intimacy or cooperation. Moreover, there is nothing to suggest that the plaintiff's ability to perform his duties should have been disrupted or interfered with by his comments. Finally, the comments allegedly made by the plaintiff are entitled to substantial protection. Thus, at this stage in the proceedings, the plaintiff has alleged a First Amendment violation.

### b. Due Process

Plaintiff also alleges his "constructive discharge" violated the due process requirements of the Fifth and Fourteenth Amendments. The Fourteenth Amendment provides, in part, that no "State [shall] deprive any person of life, liberty, or property, without due process of law."[2] In the present case, plaintiff complains he was deprived of both liberty and property without due process.

### 1) Liberty Interest

▮▮▮ In *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Court recognized that there might be cases in which a state's actions in refusing to re-hire or in discharging an employee might impinge upon a liberty interest. Citing several earlier decisions, the court noted " '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.' " *Id.* at 573, 92 S.Ct. at 2707 (citations omitted) Moreover, the Court noted that a liberty interest would be affected if the state "imposed on [an individual] a stigma or other disability that foreclosed [that individual's] freedom to take advantage of other employment opportunities." *Id.* Finding "there [was] no suggestion that the [plaintiff's] 'good name, reputation, honor, or integrity' [was] at stake", however, the Court in *Roth* held the plaintiff had failed to allege the deprivation of any liberty interest.

The allegations in the present case, however, are quite different. The plaintiff has

1. In applying the *Pickering* balance test to determine whether or not the alleged speech implicates the First Amendment, this court was originally inclined to apply the test separately to the two groups of defendants, the Hope defendants and the state defendants. Obviously, considering the alleged plight of the defendant, School of Hope, the *Pickering* test would have applied more favorably to the Hope defendants. The working relationship between the plaintiff and the Hope defendants is much closer; moreover, as an employer facing the coercive withholding of the majority of its operating funds, the defendant, School of Hope, would have possessed a much greater interest in silencing an arguably outspoken employee.

Upon reflection, however, this court has concluded the *Pickering* balancing test should be applied from the vantage of the state defendants. The Hope defendants § 1983 liability, if any, is dependent upon their having conspired with the state defendants; this court has clearly rejected the notion that the defendant, School of Hope, was a *de facto* state agency owing any independent duty to refrain from interfering with the plaintiff's federally protected rights. Indeed, had no conspiratorial state involvement been alleged, the Hope defendants could not be held liable for allegedly forcing the plaintiff's resignation in retaliation for his statements. Consequently, this court has applied the *Pickering* test soley from the vantage of the state defendants.

2. The Fifth Amendment similarly provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." Ordinarily, however, the Fifth Amendment is applied in the context of federal, not state, employment.

alleged various statements by the state defendants, repeated and acquiesced in by the conspiring Hope defendants, which would not only jeopardize his good name, reputation, honor or integrity, but seriously affect his opportunity to take advantage of other employment opportunities. Plaintiff alleges, for example, that he was criticized because of his "lack of cooperation", "defensiveness", "behavioral attitude", "misuse of funds" and delays in preventing the physical abuse of clients. These allegations are far from trivial. *See Smith v. Board of Education of Urbana School District No. 116*, 708 F.2d 258, 265–66 (7th Cir.1983) Thus, in the view of this court, the plaintiff has adequately alleged the deprivation of a liberty interest without procedural due process.

### 2) Property Interest

■ In *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the Court recognized that a non-tenured teacher might have a protected property interest in continued employment despite the absence of any express contractual right. The court recognized that "[a] teacher, like the [plaintiff], who ha[d] held his position for a number of years, might be able to show from the circumstances of his service—and from other relevant facts—that he ha[d] a legitimate claim of entitlement to job tenure." *Id.* at 602, 92 S.Ct. at 2700. Citing the existence of a published "Faculty Guide", the Court remanded the case to allow the plaintiff "an opportunity to prove the legitimacy of his claim of such entitlement in light of 'the policies and practices of the institution.'" *Id.* at 603, 92 S.Ct. at 2700. *See also Vail v. Board of Education of Paris Union School District No. 95*, 706 F.2d 1435, 1438 (7th Cir.1983) *aff'd* —— U.S. ——, 104 S.Ct. 2144, 80 L.Ed.2d 377 (1984) (recognizing an implied contract as giving rise to a property interest). *But see Grimes v. Eastern Illinois University*, 710 F.2d 386 (7th Cir. 1983).

In the view of this court, plaintiff has plead sufficient facts to withstand a motion to dismiss. Plaintiff has alleged the existence of a "personnel policy" entitling him to continued employment absent a hearing and a showing of "good cause" for his termination. Nonetheless, plaintiff alleges he was "constructively discharged" without notice or a meaningful opportunity for a hearing. While the existence of such a policy may be challenged in a motion for summary judgment, the complaint is sufficient to allege the deprivation of a property interest without due process.

### 3. State Remedies

■ Finally, citing *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) for the first time in their reply memorandum, the state defendants contend the plaintiff's state tort remedies are adequate and preclude the instant § 1983 action. In *Parratt*, the Supreme Court held that negligently depriving a person of his *property* is not a violation of the Fourteenth Amendment so long as the victim has recourse to post-deprivation "due process of law". *Id.* at 543–44, 101 S.Ct. at 1917.

While the Supreme Court has not decided the question, the Seventh Circuit has extended *Parratt* to deprivations of life and liberty as well. *State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1147–48 (7th Cir.) *cert. denied* —— U.S. ——, 104 S.Ct. 491, 78 L.Ed.2d 686 (1983) ("life") and *Guenther v. Holmgreen*, 738 F.2d 879, 882–83 (7th Cir. 1984) *cert. denied* —— U.S. ——, 105 S.Ct. 1182, 84 L.Ed.2d 329 (1985) ("liberty"). The Seventh Circuit has refused, however, to extend *Parratt* to violations of substantive constitutional rights. *Guenther*, 738 F.2d at 883 (Fourth Amendment). *See also Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir.1984). Moreover, the court has expressed uncertainty about extending *Parratt* to intentional deprivations of due process. *Camic*, 712 F.2d at 1147.

In the present case, the plaintiff has alleged a *substantive* violation of his First Amendment right to free speech in addition to a violation of his due process rights. Moreover, his complaint alleges an *intentional* deprivation of his liberty and property interests. The State defendants' motion

to dismiss based upon *Parratt,* therefore, must be denied.

## B. Punitive Damages Claims

Count III of plaintiff's Amended Complaint seeks punitive damages against all of the defendants. Count III simply incorporates the plaintiff's previous allegations and adds "the acts complained of hereinbefore were wilful, unlawful, malicious, and in wanton disregard of the rights and feelings of plaintiff." Defendants' move to dismiss Count III contending the conduct alleged is not sufficient to warrant such relief.

### 1. § 1983 Claim

In *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), the court held: "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."

103 S.Ct. at 1640. *See also Bell v. City of Milwaukee,* 746 F.2d 1205, 1266 (7th Cir. 1984). In the view of this court, the allegations contained in the plaintiff's complaint would be sufficient, if proven, to allow a jury to award punitive damages. If those allegations cannot be proven, the plaintiff's claim may be properly subject to summary judgment or a directed verdict; for the present, however, the allegations are satisfactory.

### 2. State Tort Claim

Plaintiff also seeks punitive damages based upon the defendants' alleged malicious interference with his employment relationship. Both the state defendants' and Hope defendants' motions to dismiss, however, only attack the availability of punitive damages in a § 1983 action. Although both the state and Hope defendants move to dismiss plaintiff's malicious interference action on separate grounds, neither defendant specifically addresses the availability of punitive damages if their motions to dismiss are denied. Consequently, assuming that the plaintiff can properly establish the

elements of tortious interference with contract and that the interference was "wilful, unlawful, malicious, and in disregard of the rights and feelings of the plaintiff", the defendants' apparently concede his right to seek punitive damages.

## C. Pendent State Claims

### 1. Malicious Interference with Employment Relationship

Count III of plaintiff's Amended Complaint alleges a cause of action for "malicious interference with employment relationship" against all of the individual defendants. The School of Hope is not named as a defendant in Count III. Since the School of Hope was his employer, plaintiff concedes that it could not have tortiously interfered with his employment relationship.

Reasoning that a corporation can only act through its agents and employees, the individual Hope defendants seek to extend the corporation's immunity to themselves. While this court recognizes that every employee discharged by a corporate employer cannot maintain a cause of action for tortious interference simply because the decision was made and carried out by a corporate employee, it seems equally clear that every corporate employee cannot intentionally interfere with the employment relationship of a co-employee with impunity. The difficulty is to balance these competing concerns.

In *George A. Fuller Co. v. Chicago College of Osteopathic Medicine,* 719 F.2d 1326 (7th Cir.1983), the court recognized that in order to state a cause of action against corporate officers for interfering with their corporate principal's contract, a plaintiff must allege facts which, if true, "establish that the officers induced the breach to further their personal goals or to injure the other party to the contract, *and* acted contrary to the best interest of the corporation." *Id.* at 1333 (emphasis in original) (citations omitted). In *George A. Fuller Co.,* the court affirmed the dismissal of the plaintiff's tortious interference action, holding, "[the plaintiff] has alleged

**1192**

neither that the individual defendants acted contrary to [their corporate employer's] interests, nor that either [individual defendant] acted for personal gain or out of animosity towards [the plaintiff]." *Id. See also Medina v. Spotnail, Inc.*, 591 F.Supp. 190, 196–97 (N.D.Ill.1984) (Moran, J.).

In determining whether an individual defendant was acting in furtherance of his personal goals or acting contrary to the best interest of the corporation, courts have been sensitive to the defendant's relationship with the corporation. In *Worrick v. Flora*, 133 Ill.App.2d 755, 272 N.E.2d 708 (3rd Dist.1971), for example, the court held the plaintiff's conclusory allegations that the individual defendant acted intentionally and without just cause in bringing about his discharge failed to describe actionable misconduct when considered along with the fact that the defendant was the president, director and principal shareholder of the plaintiff's corporate employer. 272 N.E.2d at 710–711. *See also Rao v. Rao*, 718 F.2d 219, 225 (7th Cir.1983) ("Because [the individual defendant] is the [corporate defendant's] sole shareholder, officer and director, therefore, we are convinced that [the individual defendant] would be considered by an Illinois court not to be a separate entity capable of inducing [the defendant corporation] to breach its contracts.") Conversely, in *Ramsey v. Greenwald*, 91 Ill.App.3d 855, 47 Ill.Dec. 150, 414 N.E.2d 1266 (2nd Dist. 1980), the court stressed the fact that an individual defendant did not have the power to hire or fire the plaintiff in affirming a jury's determination that the defendant had tortiously interfered with the plaintiff's employment contract. 47 Ill.Dec. at 156, 414 N.E.2d at 1272.

In the present case, the four individual Hope defendants contend the complaint is devoid of any allegation of personal gain on their part. Moreover, since "the complaint clearly sets forth the absence of funding for the corporation while the plaintiff remained as executive director", the individual Hope defendants contend it is obvious they were "responding to a legitimate interest of the corporation by pursuing their course of action." Consequently, the Hope

defendants contend the plaintiff's Amended Complaint fails to allege a cause of action.

■ In the view of this court, the plaintiff's complaint is sufficient to allege a cause of action against the individual Hope defendants. First, it is not necessary that the plaintiff allege any personal gain on the part of the defendants. The Seventh Circuit's decision in *George A. Fuller Co.* makes clear that the plaintiff need only establish "the officers induced the breach to further their personal goals *or to injure the other party to the contract*" (emphasis added). In the present case, the plaintiff has alleged the individual Hope defendants repeated and acquiesced in statements concerning the plaintiff, including the plaintiff's alleged misuse of state funds, which they knew or should have known to be false. In the view of this court, those allegations are sufficient, at this stage in the proceedings, to adequately plead an intention to injure the plaintiff.

■ Second, in the view of this court, the complaint is adequate to allege the defendants acted contrary to the interest of the corporation. The plaintiff was employed as the School of Hope's executive director from September 2, 1974 to June 9, 1983. From the duration of his tenure alone, this court can infer the plaintiff was a valuable asset to his employer. Simply because certain state employees were wrongfully withholding funds, therefore, it does not follow that the individual Hope defendants were acting in the best interest of the School of Hope by pursuing the unjustified discharge of such a valued employee. Indeed, the idea that the defendants were acting in the best interest of the School of Hope is negated by the fact that the Hope defendants allegedly surreptitiously pursued his termination by repeating and acquiescing in false statements about his performance. Finally, while it is not entirely clear from the complaint, the Hope defendants' chosen course of action further suggests that they could not, acting individually, have brought about the plaintiff's discharge. Consequently, their interests and the corporation's interest can-

not, as a matter of law, be said to be identical. Thus, based upon the allegations in the plaintiff's Amended Complaint, this court is unable to hold, as a matter of law, that the individual Hope defendants did not tortiously interfere with the plaintiff's employment relationship.

## 2. Breach of Employment Agreement

Count IV of plaintiff's Amended Complaint seeks recovery for breach of contract against the defendant, School of Hope. Plaintiff's claim for breach of contract is premised upon the requirements of a personnel policy which "became a part of the contracts of employment between [the] defendant [School of Hope] and its employees, including the plaintiff." Plaintiff alleges that the subject personnel policy was adopted during the course of his employment and that he and other employees continued their employment in reliance upon the provisions of the subject policy.

The defendant, School of Hope, contends the plaintiff did not have a written or oral employment contract of any specified duration and, consequently, was terminable at will. Moreover, the defendant, School of Hope, denies that the subject personnel policy was made part of any agreement between the parties. The defendant, School of Hope, therefore, contends a breach of contract action is not maintainable.

Illinois courts have reached varying conclusions concerning the binding effect of personnel policies. In *Carter v. Kaskaskia Community Action Agency*, 24 Ill.App.3d 1056, 322 N.E.2d 574 (1st Dist.1974), for example, the court held a personnel policy could form the basis for a breach of contract action where the personnel policy was bargained for and approved during the plaintiff's tenure and the plaintiff, as consideration for the adoption of the personnel policy, continued in his employment. Beginning with *Sargent v. Illinois Institute of Technology*, 78 Ill.App.3d 117, 33 Ill.Dec. 937, 940, 397 N.E.2d 443, 446 (1st Dist. 1979), several subsequent decisions limited *Carter* to its facts, refusing to allow personnel policies to serve as a basis for breach of contract actions where the per-

sonnel policy was already in place at the time the plaintiff commenced his or her employment and, consequently, was not bargained for by the parties. *See also Enis v. Continental Illinois National Bank & Trust*, 582 F.Supp. 876, 879 (N.D. Ill.1984) (Bua, J.) and *Rynar v. Ciba-Geigy Corp.*, 560 F.Supp. 619, 642 (N.D.Ill.1983) (Will, J.) Most recently, however, the court in *Kaiser v. Dixon*, 127 Ill.App.3d 252, 82 Ill.Dec. 275, 468 N.E.2d 822 (2nd Dist.1984) refused to follow *Sargent*, reasoning that "once an employer has promulgated a policy 'presumably with a view to obtaining the benefit of improved employee attitudes and behavior and improved quality of work force, the employer may not treat its promise as illusory.'" 468 N.E.2d at 831 (quoting *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 619, 292 N.W.2d 880, 895 (1980)).

Regardless of which approach is followed in the present case, based upon the allegations of the plaintiff's complaint, the subject personnel policy may properly form the basis for the plaintiff's breach of contract action. Plaintiff alleges that the subject policy was adopted during his tenure and that, as a result, he continued his employment with the defendant, School of Hope. Thus, under *Carter*, even as limited by *Sargent*, the subject personnel policy is a part of the parties' contract.

Aside from contesting the applicability of the subject personnel policy, the defendant, School of Hope, does not, for the purposes of the present motion, address the substantive allegations concerning the breach of contract. Thus, defendant, School of Hope's, motion to dismiss Count IV is denied.

## D. State Defendants' Immunity

The state defendants contend they are entitled to absolute immunity for any actions taken in their official capacities. Moreover, to the extent they are sued in their individual capacities, the state defendants contend they are immune from any pendent state actions. Finally, to the extent the plaintiff's actions are not absolute-

ly barred, the state defendants contend they are barred by their qualified immunity.

### 1. Absolute Immunity

The Eleventh Amendment of the United States Constitution bars actions against the states. Moreover, if the state is the real party in interest, the Eleventh Amendment bars actions against state agencies or officials. *Edelman v. Jordon*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); and *Lincoln County v. Luning*, 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766 (1890). Whether the state is the real party in interest ordinarily depends upon whether any judgment would be paid from the state treasury. *Ranyard v. Board of Regents*, 708 F.2d 1235, 1238 (7th Cir.1983).

It is well established, however, that the Eleventh Amendment does not immunize a state official from a claim that he has deprived another of a federally protected right under the color of state law. *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). In *Ex Parte Young*, the Court held that when a state officer acts under color of state law in a manner violative of the Federal Constitution "he is ... stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." *Id.* at 159–60, 28 S.Ct. at 454. *See also Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Consequently, it is irrelevant whether the state elects to indemnify its officials out of the state treasury or not. *McAdoo v. Lane*, 564 F.Supp. 1215, 1219 (N.D.Ill.1983) (Marshall, J.)

In the view of this court, the Eleventh Amendment fails to afford the individual state defendants any absolute protection from the instant § 1983 actions. The state defendants are being sued in their individual capacities. Any judgment will not automatically be recoverable from the state treasury. *McAdoo, Id. See also* Ill.Rev. Stat. ch. 127, ¶ 1302 (1983). Consequently,

the Eleventh Amendment is not applicable to plaintiff's § 1983 actions.

The question of whether the state defendants are absolutely immune from plaintiff's pendent common law actions presents a more difficult question. In *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), a plurality of the Court held that a federal government official performing discretionary functions within the outer perimeter of his authority was absolutely immune from a civil libel suit arising from those actions. An act lies within the outer perimeter of an official's authority so long as it bears some reasonable relation to, and connection with, his or her duties and responsibilities. *Scherer v. Brennan*, 379 F.2d 609, 611 (7th Cir.) *cert. denied* 389 U.S. 1021, 88 S.Ct. 592, 19 L.Ed.2d 666 (1967).

In *Oyler v. National Guard Association of the United States*, 743 F.2d 545, 554 (7th Cir.1984), however, the court refused to extend the *Barr v. Matteo* federal doctrine of immunity to Illinois state officials. Instead, the court indicated the state's own immunity rules should apply. The court, noting that it had not discovered or been presented with any authority extending such immunity, held "[a]ny other conclusion would obviously constitute an unwarranted interference by this court with the substantive law of Illinois." *Id.*

In *Tchereprin v. Franz*, 570 F.2d 187, 191 (7th Cir.) *cert. denied* 439 U.S. 876, 99 S.Ct. 214, 58 L.Ed.2d 190 (1978) the court noted that "in Illinois, as in other jurisdictions, the immunity conferred on public officials is a qualified one, one that is displaced by an official's ... malicious and corrupt conduct in the performance of discretionary duties." In the present case, the only common law action alleged against the state defendants involves their alleged malicious interference with the plaintiff's employment relationship. Thus, the state defendants possess no absolute immunity to plaintiff's § 1983 or common law actions.

### 2. Qualified Immunity

■ In their memorandum in support of their motion to dismiss, the state defendants stated that "[f]ollowing the reasoning of *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727 at 2737–38, 73 L.Ed.2d 396 (1982), the state defendants will, if necessary, raise their public official immunity as an Affirmative Defense in a Summary Judgment Motion." In their reply brief, however, the state defendants move to dismiss the plaintiff's complaint based upon *Harlow,* arguing the allegations in the plaintiff's complaint are insufficient, as a matter of law, to overcome their qualified immunity. Specifically, because the plaintiff alleged the state defendants "knew *or should have known*" the various statements they allegedly made about him were false, the state defendants contend the plaintiff has only alleged mere negligence.

While there may be appropriate cases for granting a motion to dismiss based upon a state official's qualified immunity, the instant action does not present such a case. Plaintiff alleges the state defendants intentionally engaged in a conspiracy to deprive him of his constitutional rights and injure him in his employment. While the state defendants may not have known with certainty that the statements they made about the plaintiff were "false, misleading and pretextual," the statements were still allegedly made in furtherance of an intentional, retaliatory scheme. Under the circumstances of this case, plaintiff has alleged sufficient facts, at this state in the proceedings, to overcome the state defendants' motion to dismiss.

### CONCLUSION

For all of the reasons set forth herein, defendants motions to dismiss are denied. After the parties have had an opportunity to conduct discovery, the defendants may elect to challenge the plaintiff's various allegations in a motion for summary judgment. At this stage in the proceedings, however, the plaintiff's complaint properly alleges cause of actions against all of the defendants.