FIFTH DIVISION

March 24, 2000

Nos. 1-98-3057) Consolidated

1-98-3185) 

No. 1-98-3057 )

)

STEVE POULOS, ) 

) 

Plaintiff-Appellant, ) 

)          Appeal from

v. )       the Circuit Court

)        of Cook County.

LUTHERAN SOCIAL SERVICES OF ILLINOIS, )      

INC., and NANCY GOLDEN, )

)

Defendants-Appellees. )

________________________________________)    No.  93-L-11761

)

No. 1-98-3185 )

)

STEVE POULOS, )           

)           Honorable

Plaintiff-Appellee, )      Richard E. Neville,

)        Judge Presiding.

v. )

)

LUTHERAN SOCIAL SERVICES OF ILLINOIS, )

INC., and NANCY GOLDEN, ) 

)

Defendants-Appellants. ) 

PRESIDING JUSTICE THEIS delivered the opinion of the court:

In 1993, plaintiff Steve Poulos brought suit against defendants Nancy Golden and Lutheran Social Services of Illinois, Inc., a nonprofit social service agency, alleging false light and tortious interference with a contractual relation.  The matter was subsequently tried before a jury, which returned a verdict in favor of plaintiff in the amount of $219,000.  Judgment was entered on that verdict in May 1998.

Both plaintiff and defendants have appealed.

For the following reasons, we affirm in part, reverse in part and remand for a trial on the issue of punitive damages.

BACKGROUND

At trial, Katherine Poulos testified that she and her husband, plaintiff Steve Poulos, became foster parents to two brothers in 1985.  Both children, R.F. and J.F., had severe emotional problems.  In 1986, Katherine and her husband added another foster child to their family.  That child, Daniel, was later adopted by Katherine and her husband in April 1987.

As time passed, Katherine and her husband came to the conclusion that they could not properly care for R.F. and J.F.  According to Katherine, both brothers were exhibiting behavioral problems that posed too great a danger to Daniel.  In March 1988, R.F. and J.F. were placed with other foster families.

On December 29, 1988, Joanne Deckman, an investigator with the Department of Children and Family Services, informed Katherine that her husband was being investigated in connection with allegations of sexual abuse made against him by R.F., their former foster child.  Katherine stated that she and her husband immediately hired an attorney, who advised them that Daniel should be examined by a physician.  Daniel was seen by a physician shortly thereafter, as was plaintiff.  A few days later, Katherine learned that one of the cultures taken from Daniel indicated the presence of gonorrhea.  Katherine had Daniel immediately reexamined.  The results of the second examination were in marked contrast to those of the original.  Specifically, none of the results of that second examination indicated the presence of gonorrhea.  Around that same time, Katherine also learned that gonorrhea had not been detected during the examination of her husband.

Nevertheless, Daniel was temporarily placed in foster care and a petition to declare Daniel a ward of the court was filed on his behalf.  That petition was directed against Katherine and her husband and centered around certain allegations of sexual abuse by the latter.

Katherine and her husband met with defendant Nancy Golden in January 1989.  Golden was a social worker employed by defendant Lutheran Social Services.  She was assigned to monitor the foster care provided to Daniel and to provide counseling and related services to Katherine and her husband.  According to Katherine, Golden told them they had to proceed under the assumption that her husband was guilty in order to progress towards regaining custody of Daniel.  Katherine also testified that Golden told her, privately, she would never see Daniel again if she did not divorce her husband.

Katherine and her husband met with Golden again in February 1989.  Katherine told Golden that her husband was still employed and teaching physical education at Francis W. Parker School.  Golden appeared surprised, stating, "[W]ell, if I was [
sic
] a parent, I wouldn't want Steve around my child."  Katherine reminded Golden that Francis Parker had already made its decision, fully informed of the sexual abuse allegation against her husband.  According to Katherine, Golden replied, "[W]ell, we'll see about that." 

Approximately two weeks later, plaintiff was asked to take a paid leave of absence from Francis Parker, and he did so.  Plaintiff was terminated the following July.

On December 26, 1989, after 11 months, the wardship proceedings were dismissed, and Daniel was immediately returned to Katherine and her husband.  According to Katherine, Francis Parker did not immediately rehire her husband.  Rather, it conditioned such a return upon the removal of his name from a list, maintained by the Department of Children and Family Services, to which he had been added as a result of the allegations of sexual abuse against him.  Plaintiff met that condition and, in turn, was offered a one-year contract.  However, Katherine stated that her husband refused that offer, after determining the conditions attached to it were unacceptable.

Defendant Nancy Golden testified that, upon being assigned to monitor the foster care of Daniel, she reviewed the allegations of sexual abuse against plaintiff.  Golden learned that R.F. and J.F. had severe emotional problems.  She also learned that R.F. had recanted his allegations of sexual abuse against plaintiff and that his brother, J.F., denied those allegations in their entirety.  Golden was also aware that Daniel had been reexamined and found to be free of gonorrhea.  Golden further testified that she knew plaintiff had also tested negative for gonorrhea.

Golden met with plaintiff and his wife on February 17, 1989.  During that meeting, she learned that plaintiff was still teaching at Francis Parker.  Golden denied she expressed any dissatisfaction with that arrangement.  However, Golden later testified that she was "greatly concerned" with the safety of the students at Francis Parker following that meeting. 

Golden next testified that, although she knew Joanne Deckman had already informed Francis Parker of the sexual abuse allegations against plaintiff, she decided to call the school herself.  When her calls went unreturned, Golden telephoned Harlene Matyas, a parent of a Francis Parker student.  According to Golden, she hoped Matyas could provide her with the name of someone in authority at Francis Parker with whom she could speak.  Golden told Matyas that she was concerned about the students at Francis Parker because a child belonging to plaintiff, a current teacher, had recently tested positive for gonorrhea.

  Golden further testified that Matyas gave her the telephone number of King Harris, then chairman of the board of trustees at Francis Parker.

Golden called Harris.  She informed him of the allegations of sexual abuse against plaintiff.  She then told Harris that plaintiff had a child, Daniel, who had recently tested positive for gonorrhea.  Golden also explained to Harris that plaintiff disputed the result of that examination, insisting it was a false positive.  Golden, however, did not tell Harris that Daniel had been subsequently reexamined and found to be free of gonorrhea.  Golden did not inform Harris that plaintiff had also been examined and had also been found free of gonorrhea.  Golden did not reveal that R.F., the former foster child who had accused plaintiff of sexual abuse, had severe mental and emotional problems or that he had recanted his allegations.  Neither did she reveal that his brother, J.F., denied those allegations in their entirety.

Harlene Matyas followed Golden.  Matyas testified that, although unsure of the date, she received a telephone call from Golden in which the latter expressed her concern for the students at Francis Parker.  According to Matyas, Golden told her plaintiff had a child who had recently tested positive for gonorrhea.  Golden also told her plaintiff was the only possible source of that infectious disease.

Matyas also testified that Golden did not ask her for the name of someone in authority at Francis Parker, and Matyas further denied giving Golden any such name.

King Harris testified that, in February 1989, he received a telephone call from Harlene Matyas.  She told him of the sexual abuse allegations against plaintiff.  She also told him plaintiff allegedly forced a former foster child to eat his own feces and that his own child recently tested positive for gonorrhea.

That same evening, Harris received a telephone call from Nancy Golden.  She also informed him of the allegations of sexual abuse against plaintiff.  Harris made notes of their conversation.  With regard to the results of the examination indicating the presence of gonorrhea in Daniel, Harris noted, "Poulos claims false positive.  Nancy Golden says definite positive."  
Harris stated Golden "felt that people who were guilty of such child abuse should not be teaching children."  

As a result of his conversations with Matyas and Golden, and a subsequent telephone call from an assistant State's Attorney, Harris called John Cotton, the principal at Francis Parker.  Harris learned that Cotton was aware of the sexual abuse allegations against plaintiff but had not yet taken any action.  Harris told Cotton that a response was required, and recommended that plaintiff be placed on a paid leave of absence until the matter was resolved.  Harris testified that his recommendation was implemented, and plaintiff was placed on a paid leave of absence for the remainder of the school year.

John Cotton testified that, in early January 1989, he received a telephone call from Joanne Deckman.  She informed him that the Department of Children and Family Services was investigating plaintiff in connection with allegations of sexual abuse of a foster child.  Cotton then met with plaintiff.  Following that meeting, Cotton determined that he would take no action against plaintiff so long as the allegations did not become public.  Shortly thereafter, Cotton received a letter from Deckman, informing him that, in the opinion of the Department of Children and Family Services, credible evidence existed to support the allegations of sexual abuse against plaintiff.

In late February, the allegations of sexual abuse against plaintiff became a matter of public knowledge.  Cotton testified that parents began calling him, demanding that plaintiff have no contact with their children.  Due to that outcry, Cotton determined that plaintiff should be placed on a paid leave of absence for the remainder of the school year.  Cotton gave plaintiff until June to clear himself of the allegations against him.  In June, Cotton granted plaintiff an extension until July 1, 1989, the date by which he needed finalized teaching contracts for the upcoming school year at Francis Parker.  However, Cotton also told plaintiff that, if he could not clear himself of the allegations by that date, he would be terminated for cause.  

Cotton terminated plaintiff as a teacher at Francis Parker on July 18, 1989.  Cotton stated that Harris had nothing to do with that decision.  However, Cotton conceded that, as principal, he answered to Harris and that Harris would occasionally assist him with decisions.

On December 26, 1989, several months later, the circuit court dismissed the wardship proceedings, ruling that the allegations of sexual abuse against plaintiff were unfounded.  Daniel was immediately returned to plaintiff and his wife.

In February 1990, after learning the allegations of sexual abuse against plaintiff had been dismissed, Cotton informed plaintiff that any return to Francis Parker was conditioned upon the expungement of his name from the list at the Department of Children and Family Services to which he had been added as a result of the allegations of sexual abuse against him.  According to Cotton, plaintiff accomplished that by the following June.  Cotton testified he then offered to reinstate plaintiff as a teacher at Francis Parker, but only on the condition that he agree to remediation.  As Cotton explained, remediation was a process in which a teacher was evaluated during the course of a school year.  Cotton denied the circuit court proceedings had anything to do with his insistence that remediation be made a condition to any reinstatement of plaintiff.

After hearing all the evidence and arguments of counsel, the jury returned a verdict in favor of plaintiff, awarding him $219,000 in compensatory damages.

These appeals followed.

DISCUSSION

I

Defendants initially contend the circuit court erred in denying their motions for a directed verdict and judgment notwithstanding the verdict.

A circuit court properly enters a directed verdict or judgment notwithstanding the verdict when the evidence, viewed in the light most favorable to the nonmovant, so overwhelmingly favors the movant that no contrary verdict could ever stand.  
Maple v. Gustafson
, 151 Ill. 2d 445, 453, 603 N.E.2d 508, 512 (1992).  However, where the resolution of factual disputes or the assessment of witness credibility is critical to the outcome of an action, a circuit court may not direct a verdict or grant a judgment notwithstanding the verdict.  
Maple
, 151 Ill. 2d at 454, 603 N.E.2d at 512
.

The same standard is applied on appeal.  
Bialek v. Moraine Valley Community College School District 524
, 267 Ill. App. 3d 857, 860, 642 N.E.2d 825, 827 (1994)
.

A

Defendants specifically maintain plaintiff failed to establish all of the elements in his action for false light.

In order to recover for false light, a plaintiff must plead and prove (1) that defendant placed him in a false light before the public, (2) that the false light in which he was placed would be highly offensive to a reasonable person, and (3) that defendant acted with actual malice.  
Kolegas v. Heftel Broadcasting Corp.
, 154 Ill. 2d 1, 17-18, 607 N.E.2d 201, 207 (1992).

1

Defendants first argue plaintiff failed to establish he was placed in a false light before the public.

What is sufficient to establish the element of "before the
 
public" in an action for false light has not yet been decided by our supreme court.  Nor has this court had the opportunity to address that issue.  However, this court has had occasion to address the element of publicity in an action for public disclosure of private facts.  
E.g.
, 
Doe v. TCF Bank Illinois, FSB
, 302 Ill. App. 3d 839, 841-43, 707 N.E.2d 220, 221-23 (1999); 
Roehrborn v. Lambert
, 277 Ill. App. 3d 181, 184, 660 N.E.2d 180, 182 (1995); 
Miller v. Motorola, Inc.
, 202 Ill. App. 3d 976, 978-81, 560 N.E.2d 900, 902-03 (1990)
.  Actions for false light and public disclosure of private facts are closely related.  Indeed, each is considered to be an action for invasion of privacy.  
Lovgren v. Citizens First National Bank of Princeton
, 126 Ill. 2d 411, 416, 534 N.E.2d 987, 988 (1989).  A comparison is therefore worthwhile.

An action for public disclosure of private facts provides a remedy for the dissemination of true, but highly offensive or embarrassing, private facts.  1 M. Polelle & B. Ottley, Illinois Tort Law §6.09 (2d ed. 1996).  In order to recover under such an action, a plaintiff must establish (1) that a defendant gave publicity to a private fact, (2) that such a fact would be highly offensive to a reasonable person, and (3) that such a fact was not of legitimate public concern.  
Miller
, 202 Ill. App. 3d at 978-79, 560 N.E.2d at 902
.  The publicity element in an action for public disclosure of private facts has been generally defined as communication of a private fact "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."  Restatement (Second) of Torts §652D (1977).  An exception does, however, exist.  In Illinois, the publicity element in an action for public disclosure of private facts may be satisfied by establishing that a defendant disclosed highly offensive private facts to a person or persons with whom a plaintiff has a special relationship.  
Miller
, 202 Ill. App. 3d at 979-81, 560 N.E.2d at 902-

03.  As reasoned by this court in 
Miller
, the adoption of such an exception is both justified and appropriate in that a disclosure to a limited number of persons may be just as devastating to a plaintiff as a disclosure to the general public.  
202 Ill. App. 3d at 980-81, 560 N.E.2d at 903.

The reasoning in 
Miller
 is sound.  That reasoning is also persuasive with regard to actions for false light.  It is, therefore, adopted.  Accordingly, the element of "before the public"
 
in an action for false light may be satisfied by establishing that false and highly offensive information was disclosed to a person or persons with whom a plaintiff has a special relationship.
(footnote: 0)
The evidence at trial established that Golden telephoned Harris, then chairman of the board of trustees at Francis Parker, and spoke to him about plaintiff, then a teacher at Francis Parker.  The evidence also established that the board of trustees was a "governance body responsible for *** hiring the principal of the school and overseeing a wide variety of matters."  That evidence was sufficient to establish a special relationship between plaintiff and Harris.

2

Defendants also argue plaintiff 
failed to establish the statements made by Golden to Harris were false or that she acted with actual malice.

Plaintiff introduced evidence at trial that Golden told Harris the examination result that indicated Daniel was infected with gonorrhea was a "definite positive."  The jury may well have interpreted that statement as an assurance by Golden that there was absolutely no possibility the aforementioned examination result was in error, thereby placing plaintiff in a false light.  The jury could well have determined as much in light of the evidence that Daniel had been subsequently reexamined and found to be free of gonorrhea.  Evidence that plaintiff himself was examined and found to be free of gonorrhea further supports the determination of the jury.  Accordingly, it cannot be said the determination of the jury was contrary to the evidence.  That determination, therefore, will not be disturbed.

The jury also found defendants acted with actual malice.

With regard to actions for false light, actual malice has been defined by our supreme court as knowledge that the statements made by a defendant were false or that such statements were made with reckless disregard as to their truth or falsity.  
Kolegas
, 154 Ill. 2d at 17-

18, 607 N.E.2d at 209-10
.

The evidence at trial established that Golden knew about the result of the second examination of Daniel, which indicated he was not infected with gonorrhea, before she telephoned Harris.  Furthermore, the evidence at trial established Golden was also aware plaintiff himself had been examined and found to be free of gonorrhea before she telephoned Harris.  That evidence, when viewed in a light most favorable to plaintiff, supports the determination of the jury.  There is no basis, therefore, to disturb that determination.

3

Defendants also contend that plaintiff "failed to meet his burden as to 
disclosure of facts about his 
'
private life
.'"  (Emphasis in original.)  According to defendants, the evidence at trial established that "the information conveyed to [Harris]" by Golden had already been made public by others as well as by plaintiff himself.

At trial, plaintiff testified that, prior to the telephone conversation between Golden and Harris, he told certain close friends and family he had been accused of sexual abuse.  Plaintiff also informed Cotton of the allegations against him.  However, plaintiff, at all times, categorically denied the truth of those allegations.

By voluntarily informing others of the sexual abuse allegations against him, plaintiff may be said to have consented to the publication of those allegations.  Nevertheless, such consent may not be said to constitute a license for defendants to publicize false and highly offensive information.  
Anderson v. Low Rent Housing Comm'n
, 304 N.W.2d 239, 250-51 (Iowa 1981)
.  Accordingly, that Harris and others may have known of the sexual abuse allegations against plaintiff is no defense to the actions of defendants.

4

Defendants further contend plaintiff failed to establish the allegations of sexual abuse against him were not of legitimate and proper interest to Harris, then chairman of the board of trustees at Francis Parker.

There is no such element in an action for false light.  See 
Kolegas
, 154 Ill. 2d at 17-18, 607 N.E.2d at 207.  Moreover, as previously noted, Harris had no legitimate and proper interest in learning false and highly offensive information about plaintiff.   

B

Defendants also maintain plaintiff failed to establish all the elements of his action for tortious interference with a contractual relation.

Recovery under an action for tortious interference with a contractual relation requires that a plaintiff plead and prove (1) the existence of a valid and enforceable contract between the plaintiff and a third party, (2) that defendant was aware of the contract, (3) that defendant intentionally and unjustifiedly induced a breach of the contract, (4) that the wrongful conduct of defendant caused a subsequent breach of the contract by the third party, and (5) that plaintiff was damaged as a result.  
Strosberg v. Brauvin Realty Services, Inc.
, 295 Ill. App. 3d 17, 32-33, 691 N.E.2d 834, 845 (1998)
.

1

Defendants specifically argue plaintiff failed to establish Golden intentionally and unjustifiedly induced a breach of the contract between himself and Francis Parker.

At trial, plaintiff introduced evidence that Golden not only placed him in a false light before Harris but that she also told Harris, "[P]eople who were guilty of such child abuse should not be teaching children."  Plaintiff also introduced evidence that Golden told his wife, "[W]ell, we'll see about that," upon learning Francis Parker had, at the time, taken no action against him. 

Based upon that evidence, the jury could well have found that Golden intentionally and unjustifiably induced a breach of the contract between plaintiff and Francis Parker.  
Ramsey v. Greenwald
, 91 Ill. App. 3d 855, 862-63, 414 N.E.2d 1266, 1272-73 (1980); see also 
Stewart v. Ost
, 142 Ill. App. 3d 373, 374, 491 N.E.2d 1306, 1307-08 (1986); 
Powers v. Delnor Hospital
, 135 Ill. App. 3d 317, 320-21, 481 N.E.2d 968, 970-71 (1985).

2

Defendants also argue no evidence was offered to establish that Francis Parker breached its contract with plaintiff.  According to defendants, Francis Parker did not breach that contract because Cotton terminated plaintiff for "cause."  Defendants further maintain that, even if Francis Parker was shown to have breached its contract with plaintiff, no evidence was offered to establish that their actions caused such a breach.

The contract between Francis Parker and plaintiff gave Cotton the authority to fire plaintiff for "cause."  That contract, however, did not define the term "cause."  Cotton testified he terminated plaintiff because the latter was unable to clear himself of the sexual abuse allegations against him by July 1, 1989.  The jury, as the ultimate trier of fact, determined that the testimony of Cotton was not sufficient to establish "cause."  The jury did so by expressly finding, within a special interrogatory, that the contract between plaintiff and Francis Parker was wrongly breached.  In so finding, the jury may well have concluded that, because plaintiff had no meaningful control over the speed with which the allegations of sexual abuse against him were adjudicated, his termination by Cotton was without "cause" and, therefore, a breach of the contract between plaintiff and Francis Parker.

The evidence at trial also established that Joanne Deckman spoke with Cotton on January 13, 1989, regarding his implementation of a protective plan that would allow plaintiff to continue teaching following the allegations of sexual abuse.  Two weeks later, on January 27, 1989, Deckman wrote a letter to Cotton, informing him that, in the opinion of the Department of Children and Family Services, credible evidence existed to support the allegations of sexual abuse against plaintiff.
  Cotton, nevertheless, allowed plaintiff to continue teaching.

It was not until Golden telephoned Harris in late February 1989 that the situation at Francis Parker began to change.  The evidence established that, after speaking with Golden, Harris called Cotton and recommended that plaintiff be placed on a paid leave of absence.  His recommendation was adopted, and plaintiff was placed on a paid leave of absence for the remainder of the school year.  Plaintiff was terminated several months later.

Although Cotton may have made the final decision to fire plaintiff, the disclosure by Golden to Harris could still have been found to have been a cause of his termination.  See 
Bentley v. Saunemin Township
, 83 Ill. 2d 10, 17, 413 N.E.2d 1242, 1246 (1980).  In short, plaintiff introduced sufficient evidence for the jury to find the element of breach.

II

A

Defendants next contend the circuit court erred in refusing to direct a verdict affirming that Golden was conditionally or qualifiedly privileged to act as she did.

A conditional or qualified privilege requires, among other things, proof of good faith.
  12 Illinois Jurisprudence, 
Personal Injury & Torts
 §17:62 (1994).
  However, a fundamental element in an action for false light is actual
 
malice.  
Kolegas
, 154 Ill. 2d at 17-

18, 607 N.E.2d at 207.  Good faith and actual malice cannot coexist.  They are mutually exclusive.  See 1 M. Polelle & B. Ottley, Illinois Tort Law §5.42 (2d ed. 1999).

As previously noted, plaintiff established the existence of actual malice on the part of Golden.  Accordingly, defendants have shown no error in the denial of their motion for a directed verdict on the issue of conditional or qualified privilege.

B

Defendants also argue the circuit court erred in refusing to direct a verdict or grant their motion for judgment
 notwithstanding the verdict 
affirming their immunity pursuant to the Illinois Mental Health and Developmental Disabilities Confidentiality Act (Act) (740 ILCS 110/1 
et seq.
 (West 1998)). 

Section 11 of the Act provides immunity to social workers in connection with certain good-faith disclosures.  740 ILCS 110/11 (West 1998).  Section 11 further provides a presumption that social workers act in good faith in making such disclosures.  740 ILCS 110/11 (West 1998).  That presumption, however, may be overcome by a showing of bad faith.  See 
Lehman v. Stephens
, 148 Ill. App. 3d 538, 551-52, 499 N.E.2d 103, 112 (1986). 

As previously determined, the evidence introduced at trial was sufficient for the jury to find that Golden acted with actual malice or bad faith such that the presumption of good faith within section 11 of the Act was overcome.  Accordingly, defendants have shown no error in the denial of their motion for a directed verdict nor in the denial of their motion for judgment notwithstanding the verdict
 
with regard to the issue of immunity.

III

Defendants further contend the circuit court erred in refusing to dismiss both of the actions prosecuted by plaintiff.  According to defendants, each action was barred by its respective statute of limitations.

A

An action for false light has a one-year statute of limitations.  735 ILCS 5/13-201 (West 1998)
.  However, such a limitations period will not be deemed to have commenced until such time a person knows, or reasonably should have known, of his or her injury and that such injury was wrongfully caused.  
Knox College v. Celotex Corp.
, 88 Ill. 2d 407, 415, 430 N.E.2d 976, 980 (1981).

The evidence at trial established that Golden telephoned Harris in February 1989.  Plaintiff did not file his action for false light until 1993, four years later.  However, the evidence also reveals that plaintiff did not know, and had no reason to know, of the false statements made by Golden to Harris until the latter was deposed in 1993.  Nothing in the evidence before the jury established that, before such time, plaintiff was aware Golden had spoken with Harris in February 1989 or that she had lied to Harris during their conversation.  Accordingly, the circuit court cannot be said to have erred in refusing to dismiss the action against defendants for false light.

B

An action for tortious interference with a contractual relation has a five-year statute of limitations.  
Best Coin-Op, Inc. v. Paul F. Ilg Supply Co.
, 189 Ill. App. 3d 638, 656, 545 N.E.2d 481, 493 (1989).

On April 22, 1998, prior to trial, plaintiff sought leave to amend his complaint to add the February 1989 telephone call from Golden to Matyas as an additional basis for his action against defendants for tortious interference with a contractual relation.  Defendants argue that by adding this call "as a predicate act in support of his tortious interference claim, [plaintiff] alleged a new and different occurrence as a basis for the claim."  According to defendants, by filing that amended complaint in 1998, plaintiff eliminated the original complaint, thus placing his action for tortious interference with a contractual relation outside the five-

year statute of limitations.

The circuit court, however, did not grant plaintiff leave to amend his complaint as requested.  As a result, this contention is without merit.

IV

Defendants also assert they were prejudiced by several erroneous evidentiary rulings made by the circuit court.

An abuse of discretion standard applies when reviewing the evidentiary ruling of a circuit court.  
Grewe v. West Washington County Unit District No. 10
, 303 Ill. App. 3d 299, 306, 707 N.E.2d 739, 744 (1999).

The evidentiary rulings at issue were sound and reasonable.  The circuit court did not abuse its discretion.

V

Defendants also contend the circuit court erred in denying their motion for a mistrial.  According to defendants, they were prejudiced by the inappropriate speeches and other testimony given by opposing counsel during trial.

"A mistrial should be declared only as the result of some occurrence of such character and magnitude that a party is deprived of its right to a fair trial, and the moving party must demonstrate actual prejudice as a result of the ruling or occurrence."  
Baker v. CSX Transportation, Inc.
, 221 Ill. App. 3d 121, 138, 581 N.E.2d 770, 782 (1991).  The decision to deny a motion for a mistrial is committed to the sound discretion of a circuit court.  
Maple
, 151 Ill. 2d at 455, 603 N.E.2d at 513.  Only when that discretion is shown to have been abused will such a decision be disturbed on appeal.  
Maple
, 151 Ill. 2d at 455, 603 N.E.2d at 513.

The record on appeal discloses no prejudice to defendants flowing from the conduct of opposing counsel.  Indeed, the record on appeal establishes that the circuit court sustained the objections advanced by defendants and also admonished opposing counsel against such conduct.  In short, the circuit court remedied any misconduct.  There was no error, therefore, in the denial of defendants' motion for a mistrial.

VI

Next, defendants maintain the circuit court made several errors in connection with its instruction of the jury.  According to defendants, those errors entitle them to a new trial.

A

Defendants specifically argue the circuit court erred in instructing the jury that, in order to be a proximate cause of the damages suffered by plaintiff, plaintiff need not prove their conduct 
was the sole cause of his damages but, rather, that such conduct "concur[red] with some other cause acting at the same time which[,] in combination with it[,] cause[d] the damage."  According to defendants, it is not enough their actions could be shown to have contributed to the damages to plaintiff.  Their actions, argue defendants, must be shown to have been the cause of those damages.

Defendants, however, provide no authority supporting this contention.  It is therefore waived.  
Saldana v. Wirtz Cartage Co.
, 74 Ill. 2d 379, 386, 385 N.E.2d 664, 667 (1978).  Moreover, given that there can be more than one proximate cause of an injury (
Bentley
, 83 Ill. 2d at 17, 413 N.E.2d at 1246), the circuit court cannot be said to have erred in giving the aforementioned jury instruction.

B

Defendants also argue the circuit court erred in instructing the jury that the element of "before the public" in an action for false light may be established by evidence that false and highly offensive information was communicated "to a person or persons with whom the plaintiff has a special relationship." 

As previously noted, the element of before the public in an action for false light may be established by just such a communication.  The circuit court, therefore, correctly instructed the jury as to that element.

C

Defendants further argue the circuit court erred in refusing to give the jury a comprehensive instruction in connection with the action for tortious interference with a contractual relation.

The circuit court correctly instructed the jury with regard to the action for tortious interference with a contractual relation.  Accordingly, defendants can demonstrate no prejudice in the refusal of their comprehensive instruction.

Neither can defendants demonstrate any prejudice in the refusal of their special interrogatories.  Of the two interrogatories proffered by defendants, the first did not correctly state the law with regard to the element of "before the public" in an action for false light.

As for the second interrogatory, defendants sought therein to question the jury on each of the elements required in an action for tortious interference with a contractual relation.  Two of those elements were duly addressed in other special interrogatories given to the jury.  The remaining elements addressed in that second interrogatory have been expressly conceded by defendants on appeal.  Accordingly, any contention of error in connection with the refusal of that interrogatory has been waived for purposes of appeal. 

VII

Lastly, defendants contend the circuit court erred in refusing to reduce the jury award to plaintiff by $127,000, the amount plaintiff received in a settlement of his action against Francis Parker for lost past wages.  According to defendants, plaintiff may be compensated only once for his lost past wages and, therefore, the jury award, which included such wages, should have been reduced by the amount of the prior settlement.

At trial, plaintiff introduced the testimony of Jack Skeels, an economics professor
 at Northern Illinois University.  Skeels calculated the past wages lost by plaintiff as a result of his wrongful termination from Francis Parker.  Skeels factored the settlement received by plaintiff from Francis Parker into his calculation, and the jury was made aware of that consideration.

Under these circumstances, the jury award will not be reduced.  Indeed, to allow such a reduction would leave plaintiff less than whole.

VIII

As previously noted, plaintiff has also appealed.  Plaintiff, however, confines his appeal to a single contention.  Plaintiff contends the circuit court abused its discretion in prohibiting the issue of punitive damages to go before the jury.

Punitive damages may be awarded in actions characterized by fraud or actual malice, or in actions in which "'defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others.'"  
Martin v. Heinold Commodities, Inc.
, 163 Ill. 2d 33, 80-81, 643 N.E.2d 734, 757 (1994), quoting 
Kelsay v. Motorola, Inc.
 74 Ill. 2d 172, 186, 384 N.E.2d 353, 359 (1978).  Actions for false light are no exception.  
Bryson v. News America Publications, Inc.
, 174 Ill. 2d 77, 109-11, 672 N.E.2d 1207, 1224-25 (1996).  Indeed, like an action for defamation of a public official, evidence sufficient to establish actual malice on the part of a defendant entitles a plaintiff in an action for false light to have his or her request for punitive damages considered by the trier of fact.  See 
Curtis Publishing Co. v. Butts
, 388 U.S. 130, 160-62, 18 L. Ed. 2d 1094, 1114-15, 87 S. Ct. 1975, 1994-95 (1967); 
Gibson v. Philip Morris, Inc.
, 292 Ill. App. 3d 267, 279, 685 N.E.2d 638, 647-48 (1997); 
Krasinski v. United Parcel Service, Inc.
, 208 Ill. App. 3d 771, 773-74, 566 N.E.2d 998, 999-1000 (1991); 
Winters v. Greeley
, 189 Ill. App. 3d 590, 598-600, 545 N.E.2d 422, 424-29 (1989).

At the close of all the evidence, the jury deliberated and then returned a verdict in favor of plaintiff.  As part of that verdict, the jury determined that defendants had acted with actual malice.  That determination entitled plaintiff to have his request for punitive damages considered by the jury.  The circuit court, however, refused to allow the jury to consider that request.  That was error.  Indeed, upon accepting the verdict, the circuit court was without authority to preclude the jury from further considering the issue of punitive damages.  Plaintiff had established the actual malice of defendants.  He was therefore entitled to have the jury consider his request for punitive damages.  This is not to say that a jury is required to award a plaintiff such damages.  To the contrary, punitive damages are never awarded as a matter of right.  
Winters
, 189 Ill. App. 3d at 599, 545 N.E.2d at 428.  Nor is a jury ever
 
obligated to award punitive damages, no matter how egregious the conduct of a defendant.  
Smith v. Wade
, 461 U.S. 30, 52, 75 L. Ed. 2d 632, 648-49, 103 S. Ct. 1625, 1638 (1983).

CONCLUSION

For the aforementioned reasons, we affirm the judgment of the circuit court in all respects but one.  We reverse the decision of the circuit court precluding the jury from considering the issue of punitive damages.  This matter is accordingly remanded to the circuit court for a trial solely on the issue of punitive damages.  

Affirmed in part and reversed in part; remanded with directions.

GREIMAN, J., concurs.

QUINN, J., dissents.

FOOTNOTES
0:
¹The special relationship exception announced in 
Miller
, and now adopted by this court, has been limited in recent decisions.  
E.g.
, 
Doe
, 302 Ill. App. 3d at 842-43, 707 N.E.2d at 221-23; 
Roehrborn
, 277 Ill. App. 3d at 184-85, 660 N.E.2d at 182-83.  Those decisions, each involving an action for public disclosure of private facts, 
excluded from the special
 
relationship exception those persons who have a natural and proper interest in learning such true, albeit highly offensive, private facts.

However, the limitation applied in 
Doe
 and 
Roehrborn
 has no relevance in a false light action.  Indeed, it defies logic to suggest, as defendants do, that a person with whom a plaintiff has a special relationship 
may have a natural and proper interest in learning information about the latter which is not only highly offensive but also false.  That limitation is not
 
adopted.