# Illinois Official Reports

## Appellate Court

---

### *Bank Financial, FSB v. Brandwein*, 2015 IL App (1st) 143956

---

| | |
|---|---|
| Appellate Court Caption | BANK FINANCIAL, FSB, Plaintiff-Appellee, v. BARRY BRANDWEIN, Defendant-Appellant (5628 North Broadway, LLC, Defendant). |
| District & No. | First District, Fifth Division<br>Docket No. 1-14-3956 |
| Filed | June 26, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CH-10316; the Hon. Sanjay Tailor, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Linda Spak, of Chicago, for appellant.<br><br>James M. Crowley and Christina M. Ripley, both of Crowley & Lamb, P.C., of Chicago, for appellee. |
| Panel | JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Presiding Justice Palmer and Justice Reyes concurred in the judgment and opinion. |

¶ 1 On August 27, 2009, 5628 North Broadway, LLC, received a $275,000 loan from plaintiff, Bank Financial, FSB, in exchange for a mortgage on a commercial property that rented space to an auto repair shop. Defendant, Barry Brandwein, who is the manager of the limited liability company, signed a promissory note to plaintiff for the amount of the loan. On April 17, 2013, plaintiff sought to foreclose the mortgage, as a result of unpaid loan payments and unpaid real estate taxes. The property was sold at a judicial sale, still leaving $73,459.61 of the loan unpaid. Plaintiff then sought to hold defendant liable for this amount, pursuant to the promissory note. Defendant filed a counterclaim for tortious interference and filed an affirmative defense in count II only, and did not file an answer to count I. On September 9, 2014, plaintiff moved for summary judgment on the basis of section 2-1005(c) of the Code of Civil Procedure (735 ILCS 5/2-1005(c) (West 2012)). Defendant's response to the motion for summary judgment argued that plaintiff had attempted to collect rents from the tenants of the property, and this action made it difficult for defendant to collect rent and bring the loan payments current. The trial court granted plaintiff's motion for summary judgment, and this appeal followed.

¶ 2 On appeal, defendant makes one claim: that the trial court erred in granting plaintiff's motion for summary judgment, because defendant raised a genuine issue of material fact that supported his claim that plaintiff committed tortious interference with his collection of the rent. For the following reasons, we do not find persuasive defendant's claim that the trial court erred in granting plaintiff's motion for summary judgment.

¶ 3 BACKGROUND

¶ 4 I. Pretrial Filings

¶ 5 A. Complaint

¶ 6 On April 17, 2013, plaintiff, Bank Financial, FSB, filed a complaint in the chancery division of the circuit court of Cook County against defendants, Barry Brandwein and 5628 North Broadway, LLC (the LLC). While Brandwein and the LLC are both named as defendants in the complaint, the answer was filed solely on behalf of Brandwein, and Brandwein is the sole defendant on appeal.

¶ 7 Count I of the complaint sought to foreclose a mortgage on property located on North Broadway Street, in Chicago, Illinois (the property). The mortgagor was the LLC, the mortgagee was plaintiff, and the mortgage was for $275,000.[1] The complaint alleged that the LLC did not make their monthly payments to plaintiff and did not make the payments for real estate taxes as of April 15, 2013, and that, as a result, plaintiff had accelerated the payments due under the mortgage, pursuant to an acceleration clause in the mortgage where plaintiff reserved the "right at its option without notice to Borrower or Grantor to declare the entire

[1] In plaintiff's motion for summary judgment and on appeal, plaintiff asserts that it loaned defendant and the LLC $550,000. However, in its complaint, plaintiff states that it loaned defendant and the LLC $275,000. Both the promissory note and mortgage state that the original loan was for $275,000. Plaintiff's confusion might arise from the line in the mortgage stating "MAXIMUM LIEN. At no time shall the principal amount of Indebtedness secured by the Mortgage, not including sums advanced to protect the security of the Mortgage, exceed $550,000."

indebtedness immediately due and payable, including any prepayment penalty that Borrower would be required to pay." The total due from the LLC was $279,122.43. The complaint sought, in part, to foreclose the mortgage, shorten redemption, and appoint a receiver to possess the property,

¶ 8 Count II of the complaint stated that defendant and the LLC had signed a promissory note for the amount of the mortgage, and that they had breached the promissory note by failing to make monthly payments on the mortgage. The complaint sought to hold defendant and the LLC jointly and severally liable for the total amount of $279,122.43, as well as continually accruing interest, attorney fees, and costs.

¶ 9 B. Petition to Appoint Receiver

¶ 10 On June 18, 2013, plaintiff filed a petition to appoint a receiver. Defendant and the LLC did not respond to count I of the complaint or the petition to appoint a receiver. On September 3, 2013, the court entered an order appointing a receiver for the property and an order of default against defendant and the LLC. The court later entered an order of judgment of foreclosure and sale, foreclosing on the mortgage and approving the sale of the property at public auction.

¶ 11 C. Motion to Transfer to Law Division and to Confirm Judicial Costs

¶ 12 On November 5, 2013, plaintiff filed two motions, a "motion to confirm judicial sale; approve post judgment costs; enter deficiency judgment; and award immediate possession" and a motion to transfer the case to the law division. In the first motion, plaintiff stated that it had fairly auctioned the property for $220,000 on October 21, 2013, at the judicial sale, and requested the court to confirm the sale. After the judicial sale, there was a deficiency due from defendant and the LLC of $73,459.61. The second motion requested that the chancery court transfer the case to the law division, so that plaintiff could recover the remaining debt from defendant and the LLC, pursuant to count II of the complaint.

¶ 13 On January 21, 2014, the chancery court entered an order granting plaintiff's motion to confirm the sale of the property with postjudgment costs and transferred the case to the law division to allow plaintiff to pursue count II of the complaint.

¶ 14 D. Motion for Order of Default and Judgment

¶ 15 On April 16, 2014, plaintiff filed a motion in the trial court seeking a default judgment against defendant and the LLC. The motion alleged that defendant and the LLC were personally served on March 14, 2014. Defendant and the LLC did not file their required answer by April 14, 2014. Plaintiff sought a default judgment against defendant and the LLC for $77,771.14. This amount reflected the previous deficiency in judgment along with accrued interest and additional court and attorney fees.

¶ 16 E. Defendant's Motion to Dismiss and Plaintiff's Response

¶ 17 On May 5, 2014, defendant filed a motion to dismiss. The motion alleged that defendant was not properly served in the foreclosure case and, therefore, the chancery court did not have personal jurisdiction over him. The motion further alleged that there were defects in the pleadings. Specifically, defendant stated that the "motion to confirm sale" referred to the

property as a 12-unit nonresidential building, and the "order appointing receiver" referred to the property as a "three unit mixed commercial/residential building." Defendant asserted that the property is a single-unit garage used as an auto repair shop.

¶ 18　　On June 6, 2014, plaintiff filed a response to defendant's motion to dismiss. The response stated that any defects in the motions and orders, which plaintiff noted are not "pleadings," were not substantial. Rather, the important detail was that the property was commercial and not residential. Plaintiff also stated that defendant was attempting to attack count I of the complaint, claiming that the chancery court did not have personal jurisdiction. However, plaintiff argued that this was improper, as a final judgment in that case had been entered. Plaintiff also asserted that the motion to dismiss should be stricken because defendant's counsel had not entered her written appearance and filed the appropriate fee.

¶ 19　　On June 27, 2014, the trial court struck defendant's motion because his counsel had failed to enter her written appearance and pay the appropriate fee. Defendant and the LLC were granted 21 days to answer count II of the complaint.

¶ 20　　　　　　　　　F. Defendant's Answer and Plaintiff's Response

¶ 21　　On July 17, 2014, defendant filed an answer and affirmative defense to count II of plaintiff's complaint. The LLC did not file an answer to the complaint. Defendant stated that he is the manager of the LLC, which was the former owner of the property. Defendant's answer stated that immediately following the filing of plaintiff's complaint on April 17, 2013, Gordana Jovanovic, a commercial banking officer for plaintiff, appeared on the property at which time she told defendant's tenants,[2] Carlos and Filiae Carreto, the owners of an auto repair shop located in the property, not to pay the monthly rent under their lease to defendant, but instead to pay the rent to plaintiff. Defendant stated that the monthly rent was $3,000. Plaintiff did not have constructive possession of the property until September 3, 2013. Defendant also claimed:

> "8. That by its demand for payment of rent, BANKFINANICAL, LLC [*sic*] effectively prevented Defendants from paying the delinquent amounts due under the Note.
>
> 9. That as a result of its wrongful demand for rent from Defendant's tenant, and the resulting inability of Defendant to use the rent to bring the loan current, the property was foreclosed and sold at the judicial sale to Plaintiff.
> ***
> 11. That the allegations contained in this Affirmative Defense would have allowed him to properly defend the foreclosure action and prevent the judicial sale from proceeding."

¶ 22　　Defendant also claimed that the court did not have personal jurisdiction over him, because he was not properly served in the foreclosure case.

¶ 23　　On August 7, 2014, plaintiff filed a "response" (reply) to defendant's answer. In the "response," plaintiff denied wrongfully demanding rent from the tenant, but agreed that defendant failed to bring the loan current and that the property was sold at a judicial sale. In

_____

[2]Defendant's answer refers to the tenants as "his" tenants; however, they were actually tenants of the LLC.

plaintiff's "response" it stated that rent from the tenants, paid to the receiver, was only $1,500 a month.

¶ 24                              G. Plaintiff's Motion for Summary Judgment

¶ 25      On September 9, 2014, plaintiff filed a motion for summary judgment for count II of the complaint. In the motion, plaintiff stated that defendant's affirmative defense failed to create a genuine issue of material fact. Plaintiff claimed that pursuant to the loan documents, plaintiff was entitled to collect and receive rents "at any time, and even though no default shall have occurred." Plaintiff exercised those rights on February 27, 2013, when it informed the tenants of the auto shop of plaintiff's right to collect rent.[3] That right came from the mortgage, which stated "Lender shall have the right, without notice to Borrower or Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. *** Lender may exercise its right under this subparagraph either in person, by agent, or through a receiver."

¶ 26      In its motion, plaintiff also stated that the chancery court did have personal jurisdiction over defendant and the LLC because service by publication was used after numerous attempts to personally serve defendant and the LLC had failed. Further, plaintiff argued that a final judgment was entered, so it was improper for defendant to assert claims relative to count I.

¶ 27                          H. Defendant's Response to Motion for Summary Judgment

¶ 28      On October 14, 2014, defendant filed a response to plaintiff's motion for summary judgment. In his response, defendant asserted that Illinois law required a receiver to be appointed by the foreclosure court before any rent could be collected on behalf of a creditor. Defendant asserted that plaintiff did not deny that it demanded rent from the property's tenants before a receiver was appointed. The response does not claim that the tenants ever paid this rent to plaintiff.

¶ 29      Defendant further claimed that he received a default notice from plaintiff on January 9, 2013, which stated that the principal payment of the note was $795.71 behind. Defendant stated that within one week after plaintiff filed its complaint, on April 17, 2009, Gordana Jovanovic, representing plaintiff, arrived on the property and demanded that tenants pay rent to plaintiff.[4] This interference of defendant's landlord-tenant business relationship prevented

---

[3]Plaintiff's motion for summary judgment states only that it informed the tenants of its right to collect rent. However, the letter sent to the tenants on February 27, 2013, does instruct the tenants to begin paying rent to plaintiff. Plaintiff does not claim in its motion for summary judgment that as a result of this letter the tenants ever paid rent to plaintiff. In plaintiff's response to defendant's answer, plaintiff does state that the receiver was paid rents by tenants after being judicially appointed on September 3, 2013.

[4]In defendant's answer and his response to the motion for summary judgment, defendant does not claim that the letter sent on February 27, 2013, instructing the tenants to pay their rent to defendant, was tortious interference. Defendant claims only that he had "difficulty" collecting rents from the tenants following Jovanovic's contact with the tenants in person after the complaint was filed on April 17, 2013.

tenant from paying the deficient amount of $795.71.[5]

¶ 30    Finally, defendant claimed that through plaintiff's demand that the tenants pay it rent, plaintiff failed its duty to mitigate damages by interfering with defendant's ability to collect rent and reinstate the note.

¶ 31    An affidavit, signed by defendant, was attached to the response. In the affidavit, defendant stated "[t]hat the interference of Gordana Jovanovich [*sic*] made it difficult to collect the rent that was needed to reinstate the loan."

¶ 32    Defendant also attached a lease for the property to the response. The lease listed Z&B Properties, LLC, as the landlord of the property, not 5638 North Broadway, LLC. The lease listed Angel Gonzalez as the tenant, not the Carretos. The lease also terminated on May 31, 2008, almost a year before plaintiff gave a loan to 5628 North Broadway, LLC.

¶ 33                        II. Hearing on the Motion for Summary Judgment

¶ 34    On December 23, 2014, the trial court heard arguments regarding the motion for summary judgment on count II of the complaint:

> "THE COURT: You know, I read the papers. There's a defense pled that the bank improperly collected rents when it didn't have possession–actual, constructive, or otherwise–of the premises. And Illinois law does not permit that.
>
>     ***
>
> PLAINTIFF'S COUNSEL: Right. They just make this allegation that an agent of the bank went to the property and demanded those rents. But there's no allegation that those rents were actually paid to the bank.
>
> THE COURT: So if there's no allegation that the rents were actually paid, there's no defense is what you're saying, I think.
>
>     ***
>
> THE COURT: So paragraph 10 actually says that, quote, 'That the interference of Gordana, last name spelled Jovanovich [*sic*], made it difficult to collect the rent that was needed to reinstate the loan.'
>
> That kind of suggests that the tenant may not have actually paid the bank. It's ambiguous at best.
>
> PLAINTIFF'S COUNSEL: It is. And just to reiterate the timeline, your honor, this all occurred approximately three months after they were required to cure the default anyway.
>
> So the default was in existence, and the note had already been accelerated before any of these allegations even arise.
>
> THE COURT: So what am I to make of this allegation that Miss Jovanovich, of the bank, told the tenants to pay the bank and not the borrower?

---

[5]The letter being referred to actually listed defendant and the LLC as $8,555.92 behind on their payments, and gave defendant and the LLC until January 23, 2013, to bring the loan current. After April 17, 2013, once the complaint was filed, plaintiff accelerated the payments, pursuant to provisions in the mortgage and note, and the actual amount due was $279,122.43.

- 6 -

DEFENSE COUNSEL: Well, I think, as it's set out in the brief, that the defendants allege that that event occurred within a week of filing the complaint for the foreclosure. So there was no appointment of receiver. And she went in and said, you're to pay me now.

THE COURT: Right. But what does it matter if there's no allegation that the tenants, in fact, paid the bank rather than the borrower?

\* \* \*

THE COURT: \* \* \* The only evidence that I have before me is an affidavit of the defendant in which he avers that a representative of the bank told the tenants to pay the bank rather than the borrower.

But short of the tenants actually paying the bank, as opposed to the borrower, I don't know what you do with that defense. I don't know whether it's a legally cognizable defense. There's no authority that's been offered.

\* \* \*

THE COURT: Is there any allegation that the tenants, in fact, did not pay the borrower and that they paid the bank?

DEFENSE COUNSEL: I don't see that.

\* \* \*

THE COURT: Okay. Here's what I'm going to do.

It would appear to me that in order for the defense to be viable and the claim to be viable—and, again, I'm talking about the defense of tortious interference and the affirmative claim for tortious interference—the defendant would have to allege that the tenants, in fact, did not pay the borrower and, instead, paid the bank as requested by the bank. But I don't have that allegation here.

So I will grant the Plaintiff's Motion for Summary Judgment and deny the Motion for Leave to File the Counterclaim."

¶ 35    The trial court granted plaintiff's motion for summary judgment, and entered deficiency judgments against defendant and the LLC in the amount of $91,524.21. This amount was based on $79,544.57 due under the promissory note,[6] and attorney fees and costs. This appeal followed.

¶ 36                                                    ANALYSIS

¶ 37    On appeal, defendant makes one claim: that the trial court erred in granting plaintiff's motion for summary judgment because defendant raised a genuine issue of material fact that supported his claim that plaintiff committed tortious interference with his ability to collect rent. For the following reasons, we do not find persuasive defendant's claim that the trial court

---

[6]Since interest was still accruing, the amount sought by plaintiff has steadily increased during the length of the litigation. On November 5, 2013, when plaintiff filed a motion with the chancery court to enter a deficiency judgment, plaintiff sought only $73,459.61, pursuant to the promissory note. On April 16, 2014, when plaintiff moved for a default judgment, plaintiff sought $77,771.14, pursuant to the promissory note. However, on December 23, 2014, when the trial court entered summary judgment, the order reflected $79,544.52 due under the promissory note. The accrual of interest explains the steady increase of these amounts.

erred in granting plaintiff's motion for summary judgment.

¶ 38                                    I. Standard of Review

¶ 39        Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2012). When a court determines whether the moving party is entitled to summary judgment, the pleadings and evidentiary material in the record must be construed strictly against the movant. *Happel v. Wal-Mart Stores, Inc.*, 199 Ill. 2d 179, 186 (2002). We review a circuit court's decision on a motion for summary judgment *de novo. Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). *De novo* consideration means the reviewing court performs the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 40        "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). "Mere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). The party moving for summary judgment bears the initial burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The movant may meet its burden of proof either by affirmatively showing that some element of the case must be resolved in its favor or by establishing " 'that there is an absence of evidence to support the nonmoving party's case.' " *Nedzvekas*, 374 Ill. App. 3d at 624 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). To prevent the entry of summary judgment, the nonmoving party must present a *bona fide* factual issue and not merely general conclusions of law. *Caponi v. Larry's 66*, 236 Ill. App. 3d 660, 670 (1992). Therefore, while the party opposing the motion is not required to prove her case at the summary judgment stage, she must provide some factual basis to support the elements of her cause of action. *Illinois State Bar Ass'n Mutual Insurance Co. v. Mondo*, 392 Ill. App. 3d 1032, 1036 (2009); *Ralston v. Casanova*, 129 Ill. App. 3d 1050, 1059 (1984). On a motion for summary judgment, the court cannot consider any evidence that would be inadmissible at trial. *Brown, Udell & Pomerantz, Ltd. v. Ryan*, 369 Ill. App. 3d 821, 824 (2006). Thus, the party opposing summary judgment must produce some competent, admissible evidence which, if proved, would warrant entry of judgment in her favor. *Brown, Udell & Pomerantz*, 369 Ill. App. 3d at 824. Summary judgment is appropriate if the nonmoving party cannot establish an element of her claim. *Willett v. Cessna Aircraft Co.*, 366 Ill. App. 3d 360, 368 (2006). We may affirm on any basis appearing in the record, whether or not the trial court relied on that basis, and even if the trial court's reasoning was incorrect. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 41                                    II. Tortious Interference

¶ 42        Defendant claims that the trial court erred in granting plaintiff's motion for summary judgment because defendant raised a genuine issue of material fact that supported his claim that plaintiff committed tortious interference with his ability to collect rents.

¶ 43        "Recovery under an action for tortious interference with a contractual relation requires that a plaintiff plead and prove (1) the existence of a valid and enforceable contract between the

plaintiff and a third party, (2) that defendant was aware of the contract, (3) that defendant intentionally and unjustifiably induced a breach of the contract, (4) that the wrongful conduct of defendant caused a subsequent breach of the contract by the third party, and (5) that plaintiff was damaged as a result." *Poulos v. Lutheran Social Services of Illinois, Inc.*, 312 Ill. App. 3d 731, 742 (2000) (citing *Strosberg v. Brauvin Realty Services, Inc.*, 295 Ill. App. 3d 17, 32-33 (1998)).

¶ 44     We first note that, on appeal, plaintiff claims that defendant cannot assert an affirmative defense of tortious interference because the property was owned by the LLC, and, therefore, defendant was not a party to any rental contract between the LLC and the tenants. Plaintiff also states that defendant has not provided a lease proving otherwise. However, we need not make a finding on whether defendant has standing to assert tortious interference, because his claim fails for other reasons.

¶ 45     Defendant's claim of tortious interference relies on *Comerica Bank-Illinois v. Harris Bank Hinsdale*, 284 Ill. App. 3d 1030 (1996). In *Comerica Bank-Illinois*, a mortgagor defaulted on its mortgage and the mortgagee, Comerica, began to exercise its assignment of rents, granted by the mortgagor as security for the loan, without foreclosing the mortgage, seeking the appointment of a receiver, or seeking approval from a court. *Comerica Bank-Illinois*, 284 Ill. App. 3d at 1031-32. Chicago Title and Trust Company, which had issued a second mortgage on the property, filed an action to foreclose on the second mortgage and a return of rents from Comerica. *Comerica Bank-Illinois*, 284 Ill. App. 3d at 1032. The trial court found that the rents properly belonged to the possessor of the property and returned the rents collected by Comerica to the mortgagor. *Comerica Bank-Illinois*, 284 Ill. App. 3d at 1032. On appeal, the Appellate Court of the First District held that the assignment of rents agreement was against public policy, holding "[t]he possession requirement reflects the public policy in Illinois that seeks to prevent mortgagees from stripping the rents from the property and leaving the mortgagor and the tenants without resources for maintenance or repair." *Comerica Bank-Illinois*, 284 Ill. App. 3d at 1033 (citing *In re J.D. Monarch Development Co.*, 153 B.R. 829 (Bankr. S.D. Ill. 1993), and *In re Michigan Avenue National Bank*, 2 B.R. 171, 185-86 (Bankr. N.D. Ill. 1980)). The court then held that, even with an assignment of rents, a mortgagee must have actual or constructive possession of a property in order to collect rents. *Comerica Bank-Illinois*, 284 Ill. App. 3d at 1034. This constructive possession could be obtained through the judicial appointment of a receiver, but merely requesting the appointment of a receiver is not enough, the court must have actually ordered the appointment. *Comerica Bank-Illinois*, 284 Ill. App. 3d at 1035.

¶ 46     However, in the case at bar, plaintiff has shown " 'that that there is an absence of evidence to support the nonmoving party's case.' " *Nedzvekas*, 374 Ill. App. 3d at 624 (quoting *Celotex Corp.*, 477 U.S. at 325). Specifically, there is no evidence that defendant was damaged by the alleged tortious interference, or even that the tenants broke their contract with defendant by not paying rent. *Poulos*, 312 Ill. App. 3d at 742. The only evidence provided by defendant was his own affidavit where he stated that, after Jovanovic approached the tenants, it became "difficult" to collect the rent. However, defendant does not state in his affidavit that the tenants actually paid rent to plaintiff, or even that the tenants did not pay rent to defendant. Even if the rent was "difficult" to collect, if the tenants did pay defendant, then there was no breach of contract, no cognizable harm, and thus no tortious interference. *Poulos*, 312 Ill. App. 3d at 742. By not providing any support that the tenants actually paid plaintiff, or that they failed to pay

defendant, defendant has not shown a factual basis to support the elements of tortious interference. *Illinois State Bar Ass'n Mutual Insurance Co.*, 392 Ill. App. 3d at 1036.

¶ 47 We also note that defendant claims that Jovanovic contacted the tenants within a week after plaintiff filed its complaint, and that her demand that the tenants pay rent to plaintiff prevented defendant from bringing the loan current. However, at that time, defendant no longer had the option of bringing the loan current. The opportunity to bring the loan current, referred to in the letter sent by plaintiff to defendant on January 9, 2013, had expired, and the total due from defendant was $279,122.43, not the $795.71 defendant claims was due. Thus, the idea that plaintiff could have used the rent from the period between when Jovanovic contacted the tenants and when the court appointed a receiver, approximately five months, to bring the loan current is not a *bona fide* factual issue. *Caponi*, 236 Ill. App. 3d at 670. If defendant stated in his affidavit or provided documents showing that rents were paid to plaintiff, plaintiff still would have been entitled to summary judgment, but the deficiency judgment would have been lessened by the rent collected by plaintiff. See, *e.g.*, *Comerica Bank-Illinois*, 284 Ill. App. 3d at 1035. Because these rents would not have allowed defendant to bring the loan current, even if defendant had provided an affidavit or documents showing the rents were not paid to him, which he failed to do, it would not warrant a judgment in his favor. *Brown, Udell & Pomerantz*, 369 Ill. App. 3d at 824.

¶ 48 For the foregoing reasons, we cannot find, as a matter of law, that the trial court erred in granting summary judgment to plaintiff. *Outboard Marine Corp.*, 154 Ill. 2d at 102; 735 ILCS 5/2-1005(c) (West 2012).

¶ 49 CONCLUSION

¶ 50 For the foregoing reasons, we do not find persuasive defendant's claim that the trial court erred in granting plaintiff's motion for summary judgment. We affirm.

¶ 51 Affirmed.